# CHARLESTON.

## SATTERLEE *v.* STRIDER.

Submitted June 22, 1888.—Decided December 1, 1888.

1. MANDAMUS—DISCRETIONARY AUTHORIRTY.

By an order of the County Court duly authorized by a popular vote a county subscribes $250,000.00 in its bonds to the capital-·stock of a railroad company, to be expended on that portion of the road located within the county, and appoints three citizens of the county a committee to take charge of the bonds and deliver the same to the company in such amounts, as in their judgment will be at the time a fair compensation to the company for the work then done in the construction of that part of the road located within the county. The company completes the road through the county, and during its construction all the bonds except $8,100.00 are delivered to the company; but before the completion of the road the County Court makes another order requiring the bonds still undelivered to·be countersigned by the president of the County Court and his concurrence and approval, before the bonds are delivered. In response to a demand made by the company upon the committee for the residue of the bonds they report, that they are satisfied that the company is entitled to the said bonds, and that they will be deliverd upon the signing of their report by the president of the County Court; and the latter refuses to sign the report, because in his judgment the company has not done the amount of work in the county to entitle it to the bonds. *Held:*

Mandamus will not lie in such case to compel the president of the County Court to countersign and deliver said bonds either to the committee or the company. (p. 786.)

2. MANDAMUS—DISCRETIONARY AUTHORITY.

While *mandamus* will lie to compel the exercise of a discretionary authority, it will not lie to control the exercise of it or compel a particular decision. (p. 789.)

*W. H. Travers* and *M. McCormick* for plaintiffs in error.

*G. Baylor* and *D. B. Lucas* for defendant in error.

SNYDER, JUDGE:

Pursuant to the authority conferred upon it by the voters

of Jefferson county at an election held on March 31, 1870, the board of supervisors of said county, at a meeting held August 23, 1870, passed and adopted the following ordinance:

" Resolved, by the board of supervisors of Jefferson county, that the sum of two hundred and fifty thousand dollars in bonds of the said county be subscribed by this board to the capital stock of the Shenandoah Valley Railroad Company, and that the said bonds, to be delivered as hereinafter directed, be issued to the said Shenandoah Valley Railroad Company, payable as follows: Fifty thousand dollars of the said bonds on the 1st day of July, 1875; fifty thousand dollars of the same on the 1st day of July, 1880; fifty thousand dollars of the same on the 1st day of July, 1885; fifty thousand dollars of the same on the 1st day of July, 1890; fifty thousand dollars of the same on the 1st day of July, 1895; the said bonds to bear six per cent. interest, payable annually, in gold.   Resolved, that David Billmyer, Logan Osburn, and George W. Eichelberger are hereby appointed a committee to take charge of the said bonds, and deliver the same to the said Shenandoah Valley Railroad Company in such amounts as in their judgment will be at the time of the said delivery a fair compensation to the said company for the work and labor then performed, and material then furnished and used, in and about the construction of the said Shenandoah Valley Railroad on that part of the line of said road which is located in the county of Jefferson, aforesaid; the said David Billmyer, Logan Osburne and George W. Eichelberger always receiving for the said bonds, at the time of the delivery thereof, an equal amount of the stock of the said Shenandoah Valley Railroad Company, in the name and for the use of the said county of Jefferson."

In the year 1870 the Shenandoah Valley Railroad Company commenced the construction of its railroad through the county of Jefferson, and completed the same about the year 1880.   This was accomplished by construction contracts made by said company with successive contractors, among whom were John Satterlee & Co.   After a portion of said bonds had been delivered by the said Billmyer and others, committee, and the greater part of said railroad had been constructed, the County Court of said county, which by a

change in the Constitution and laws of the State had, in January, 1873, become the legal successor of the board of supervisors, passed and made the following order, on May 24, 1878 :

" Ordered that the president of the court be directed from time to time to countersign the bonds and coupons thereto attached of Jefferson county, subscribed to the capital stock of the Shenandoah Valley Railroad Company, in such amounts as in the judgment of David Billmyer, Logan Osburne and George W. Eichelberger will be a fair compensation to the said company for the work and labor done and material furnished and used in the construction of the Shenandoah Valley Railroad on that part of the line of said railroad which is situated in the county of Jefferson. The countersigning of said bonds and coupons shall, however, be with the concurrence and approval of the president of this court; and the president shall not sign such an amount of the said bonds as will be required for the indemnity of land damages under a provision of the order of the board of supervisors of April 2, 1872, until so ordered by the court."

Under and by virtue of the foregoing orders, county bonds to the amount of $241,900.00 were delivered to the railroad company, or upon its orders. On July 30, 1883, the railroad company gave to John Satterlee & Co. a written order on the president of the County Court, and Logan Osburne and David Billmyer, surviving commissioners,—the said George W. Eichelberger having died prior to that date,—for the remainder of said county bonds—$8,100.00.

This order was presented to the said Osburne and Billmyer, and the bonds demanded of them. In response to this demand they, on November 25, 1883, certify that they have examined and considered the evidence offered by the said railroad company to show that since the delivery of the last installment of the bonds the company has expended within the county, in work and labor done and material furnished in and upon the construction of said road in said county, more money than the amount of the undelivered portion of said bonds; and that from the evidence they " are satisfied that said company is entitled to the residue of said bonds, to wit, $8,100.00, with the coupons thereto attached, and they will

be delivered to John Satterlee & Co., assignees of said railroad company, upon the president of the County Court signing this paper."

In reply to an application made to him by the company, I. H. Strider, the president of the County Court, on January 2, 1884, said: " I decline signing the county bonds claimed by the S. V. R. R. Co., believing that the company is not entitled to them, and that there is a balance due the county fully covering the amount of the bonds."

The said John Satterlee & Co. having thus failed to obtain the remaining $8,100.00 of county bonds, in April, 1884, presented to the judge of the Circuit Court of Jefferson county their petition setting out the foregoing facts, and averring that the said railroad company had already delivered and tendered to the county of Jefferson an amount of the certificates of its capital stock equal to the amount subscribed by said county; and that the work and labor done by said company, and material furnished by it in and about the construction of its railroad within the said county, amounted in all to the sum of $329,483.16, or $79,483.16 more than the amount of the subscription of the said county to its capital stock. The petitioners " pray that the State's writ of *mandamus* may be awarded; that the said Isaac H. Strider, president of the County Court of Jefferson county, may be compelled to countersign the said bonds yet undelivered by the said county on its original subscription of $250,000.00 to the capital stock of the Shenandoah Valley Railroad Co., and deliver the said bonds, so countersigned, to said surviving commissioners, David Billmyer and Logan Osburne, for the use and benefit of these petitioners; and that such other order may be had in the premises as justice may require " etc.

The said judge awarded an alternative writ of *mandamus* against said Strider, president etc., as prayed for in the said petition.

The defendant appeared in said Circuit Court, and moved the court to quash the said alternative writ, which motion the court overruled; and thereupon the defendant filed his return to the writ, in which he denies, that the work and labor done and materials furnished and used in the construc-

tion of said railroad within the limits of the county of Jefferson amount to the sum of $329,483.16, but that the sum so expended does not exceed the sum of $229,900.00, and that said company has already been overpaid, upon a fair estimate, for all the work done and materials furnished and used in the construction of said railroad within the limits of the said county, and that it is necessary for the protection of the interests of the county that the undelivered bonds should be withheld, until the railroad company and the county shall have determined in legal form the rights of the respective parties.

To this return the petitioners demurred; whereupon the court overruled the demurrer and directed an issue to a jury, to inquire and declare by their verdict " what sum of money was expended by the Shenandoah Valley Railroad Company for work and labor performed and material furnished and used in and about the construction of said road on that part of the line which is located in the county of Jefferson, prior to the completion thereof ? Upon this issue John Satterlee & Co. are plaintiffs, and the said Isaac H. Strider defendant." In my view of this case it is unnecessary to state the action and proceedings had upon the trial of this issue further than to say that the issue was tried, and the jury found that the expenditures of the company for the construction of its railroad through the county was but $217,350.00; and that, upon said verdict, the court refused to award the peremptory writ of *mandamus*, and dismissed the petition, with costs. It is from this final judgment that the petitioners, John Satterlee & Co., have obtained this writ of error.

Whatever may be the fortune or propriety of this writ and proceeding in other respects, I am at a loss to discover any ground upon which the issue, directed and tried as aforesaid, could have been properly founded. It seems to have been an effort to construe a contract and settle a controversy by legal proceedings in an action between parties, neither of whom were parties to said contract; nor did either of them stand in such relation thereto as to make the court's action thereon binding upon the real parties to the contract. The contract and dispute attempted to be construed and settled was between the County Court of Jefferson county

99

and the Shenandoah Valley Railroad Company, while the only parties to this proceeding are the president of the County Court of Jefferson county and John Satterlee & Co. The president of the County Court is by no means the County Court, nor does he represent the court in its legal and corporate capacity. And the fact, that John Satterlee & Co. are the assignees of a part of the bonds alleged to be due from the county of Jefferson to the said railroad company under a contract made by it with said county, does not make them the representatives of said railroad company in respect to said contract. · Therefore it seems to me that there could under no circunstances have been any legal propriety in the ordering and trial of said issue. But aside from this question, I think, the Circuit Court rightly refused the writ of *mandamus* and dismissed the plaintiff's petition.

It is contended by the plaintiffs in error that under the terms of the ordinance of the board of supervisors of Jefferson county, made August 23, 1870, Logan Osburne, David Billmyer, and George W. Eichelberger were appointed and constituted arbiters between the county and the railroad company, and that their judgment and decision as to the right of said company to have the county bonds delivered to it, were conclusive and binding in the absence of fraud, upon both the parties. It is claimed that this conclusive authority to bind both the parties is a part of the contract for the subscription and delivery of the bonds, and that the County Court, as one of the parties to said contract, had no legal right or power to alter or modify said contract in any respect, as it attempted to do by its order of May 24, 1878, whereby it required that before the delivery of said bonds they should be countersigned and approved by the president of the County Court.

If this claim is correct, the said order of May 24, 1878, is void, and can in no manner qualify or limit the authority of the commissioners to deliver the county bonds. Therefore this proceeding to compel the president of the County Court to obey that void order, by countersigning and approving said bonds, is a *felo de se*,—a mere absurdity. If that order is void, and the power of the commissioners to deliver the

bonds is plenary and supreme, then the *mandamus* should have been against the commissioners,—those possessing the absolute power and authority to act,—and not against the president of the County Court, who, according to the petitioners' theory, had no power whatever in the premises.

There can be no question that the county had the authority to subscribe to the capital-stock of the railroad company; and as to the case now before us it may be conceded, that the aforesaid ordinance of August 23, 1870, made by its board of supervisors, subscribing $250,000.00 to the capital stock of the company, constituted a contract between the county of Jefferson and the railroad company, which was valid and binding upon both parties, and could not, so far as it conferred rights or imposed duties upon either party, be altered or modified in any respect without the consent and action of both parties. *Despard* v. *County of Pleasants*, 23 W. Va. 318.

This contract, however, imposed upon the railroad company a condition which was just as obligatory as any other portion of the contract, and that is, that the bonds subscribed by the county were to be "delivered as hereinbefore directed." It then declared what this condition was, and provided the means, by which it could be made effectual, in these words: "That David Billmyer, Logan Osburne, and George W. Eichelberger are hereby appointed a committee to take charge of the said bonds, and deliver the same to said Shenandoah Valley Railroad Company in such amounts as in their judgment will be, at the time of said delivery, a fair compensation to the said company for the work and labor then performed and material furnished and used in and about the construction of the said Shenandoah Valley Railroad on that part of the line of said road which is located in the county of Jefferson."

Here the condition, which is a part of the contract, is that the bonds are to be delivered from time to time as the construction of the railroad progressed through the county, and only in such amounts as would be a fair compensation for the work then done in Jefferson county. And as a means of making this condition effectual, a committee was appointed to determine the fair compensation for the work done from time

to time, and deliver the bonds accordingly. This condition was wholly for the benefit of the county, and it alone was concerned in having it made effectual; and therefore its representative, the board of supervisors, appointed a committeee, as its agents, to see that the condition was complied with, and to deliver the bonds to the company. These commissioners were in no sense the joint arbiters, or the selected arbitrators between the county and the railroad company.

Neither the situation of the parties, the terms of the ordinance or contract, nor the necessities of the case, require or justify any such interpretation. It is not reasonable that either party to an important contract would be willing to submit his contract rights to the absolute control and simple judgment of three men. If it could be supposed that this was the fact, then the parties must have imposed a very high degree of confidence in the intelligence, honesty, and judgment of these men, acting together as a committee; and if this be so, then the death of Eichelberger, one of them, destroyed the commission and its power to act, as the power was not conferred upon two, but three arbitrators or commissioners.

The legal effect of the contract was and is that the county of Jefferson had subscribed not exceeding $250,000.00 payable in its bonds, to the capital stock of the railroad company, and these bonds were to be delivered from time to time in such amounts as would fairly compensate the company for the work then done in the county. Under this contract the right of the company to demand and have delivered to it the said bonds, depended not upon the will of the said Billmyer, Logan, and Eichelberger, the agents of the county, but upon the fact as to whether or not it had done the work in the county which entitled it to said bonds, and to what amount.

If this committee had refused to deliver any of the bonds, notwithstanding the company had done the work which by the contract entitled it to them, it would be unreasonable to say or contend that the judgment of this committee, that the company have not earned and was not entitled to the bonds, would be conclusive, and leave the company no remedy to re-

cover or compel the delivery of the bonds. But this committee being, as I think it unquestionably was, the duly authorized agent of the county, its acts within the scope of the authority conferred upon it, if without collusion or fraud, would conclusively bind the county, and have the same effect as if done by the county itself. But, till the committee acted, the county had the right to modify or altogether revoke its authority, and either appoint other agents or act by the County Court itself as the legal agent of the county. A party may be bound by the opinion of an arbitrator, but the opinion of an agent is never binding upon the principal unless accompanied or carried into effect by some act. It is the acts, and not the opinions, of the agent that bind the principal.

In my view, therefore, it was entirely legal for the County Court, for any reason satisfactory to itself, to qualify the authority of its committee, as it did by its order of May 24, 1878, by which it required said bonds to be countersigned by its president and his concurrence and approval in their delivery to the company. Such modification does not impair any right secured to the company by the contract, but is simply and only a proper and reasonable modification of the administrative process by which the purposes of the contract were to be carried into effect, leaving to the company, unimpaired, all the rights secured to it by the contract, and an efficient means of enforcing them.

The said order of May 24, 1878, conferred upon the president of the County Court a discretionary authority,—one involving the exercise of his judgment. In such cases *mandamus* will not lie. It is only where the act required is ministerial, and the duty to be performed is fixed and defined, or at least ascertainable from the facts, that *mandamus* will lie to compel its performance. It may be employed to compel the exercise of discretion, but never to control its exercise. *State* v. *Buchanan*, 24 W. Va. 362; *Wintz* v. *Board*, 28 W. Va. 227.

In the case at bar both the surviving members of the committee and the president of the County Court exercised the discretion conferred upon them, and each refused to deliver the bonds demanded by the petitioners. While it is true the

committee reported that from the evidence offered by the railroad company they were satisfied said company was entitled to the bonds, they added to their report as a condition precedent, that they would deliver said bonds "upon the president of the County Court signing this paper." This was equivalent to saying that they would deliver the bonds only in the event the president of the County Court concurred with them, and evidenced that concurrence by signing their report. This the president of the County Court refused to do, and thus both he and the committee refused to deliver the bonds. They exercised the discretionary power conferred upon them adversely to the claim of the petitioners; and, as we have seen, the writ of *mandamus* can not be resorted to to control the exercise of a discretionary authority. It did not lie in this case to compel the defendant to decide in favor of the petitioners.

For these reasons I am of opinion the defendant's motion to quash the alternative writ should have been sustained, and, inasmuch as the final judgment of the Circuit Court effected the same result that would have been produced if it had sustained said motion, the said judgment is affirmed.

AFFIRMED.