# CHARLESTON.

STATE *ex rel.* v. COUNTY COURT.

Submitted March 15, 1890.—Decided March 24, 1890.

1. *MANDAMUS*—MOTION TO QUASH.

In *mandamus* a motion to quash the alternative writ is not only the equivalent of a demurrer to such writ, but more; it puts in issue the sufficiency of the petition on which such writ has been issued.

2. *MANDAMUS*—DISCRETION.

*Mandamus* will not lie to control the exercise of the discretion of any court, board or officer, when the act complained of is either judicial or *quasi*—judicial in its nature.

3. *MANDAMUS.*

The inferior tribunal may be compelled to act in such case, if it unreasonably neglects or refuses to do so, but if it does act, the propriety of its action, however erroneous and improper, can not be questioned or controlled by *mandamus.*

4. *MANDAMUS*—WRIT OF ERROR—APPEAL.

*Mandamus* can not be permitted to usurp the place of a writ of error or appeal; nor will it lie when there is any other adequate and complete legal remedy.

5. *MANDAMUS*—COUNTY COURT—BRIDGES.

*Mandamus* will not lie to compel the County Court, under the provisions of sec. 23 chap. 39 Code, to rebuild a county bridge which had been destroyed, when it appears that said Court has, under the provisions of chap. 43 Code, decided to build a bridge across the same river 110 yards from the site of the former bridge

and thereby in effect deciding to change the location of the former bridge.

6. *MANDAMUS—*COUNTY COURT—BRIDGES.

In such case this Court will not by *mandamus* inquire into the regularity of the proceedings of the County Court establishing such bridge and altering the location of the former bridge.

7. *MANDAMUS—*COUNTY COURT—BRIDGES.

Under the provisions of chap. 43 Code, the County Court may discontinue a bridge in the same manner that it may discontinue a public road.

*J. B. Jackson, B. M. Ambler* and *C. T. Caldwell* for plaintiff in error.

*J. M. Jackson* and *J. G. McCluer* for defendant in error.

SNYDER, PRESIDENT :

Writ of error to a judgment of the Circuit Court of Wood county, pronounced January 25, 1890, in proceedings instituted in the name of the State at the relation and upon the petition of F. C. Boggs and others, for *mandamus* to compel the County Court of said county to repair and rebuild the bridge across the Little Kanawha river, at the foot of Market street of the city of Parkersburg in the said county. The material facts averred in the petition, and the exhibits filed therewith, are substantially as follows :

The petitioners are citizens and tax-payers of Wood county. In 1848 the Little Kanawha Bridge Company, a domestic corporation, built a toll-bridge across the Little Kanawha River at the foot of Market street of the city of Parkersburg in Wood county. In 1850, another corporation under the name of the Parkersburg and Elizabethtown Turnpike Company, constructed a turnpike road on the lower side of said river from Parkersburg to Elizabethtown in Wirt county, and extending across said bridge to the foot of Market street in said city of Parkersburg, which said road and bridge were used as a public highway. By an act of the legislature the said turnpike road in 1868, so far as it lies in Wood county, was transferred to and became the property of said county, and has from that time to the present, under the supervision of the county authorities, been used and worked as a public highway. In 1881, the County Court of

Wood county purchased the said bridge from the said Little Kanawha Bridge Company, and a deed therefor was duly executed to said County Court and recorded in said county; and by an order of said court said bridge was made a free bridge, and it thereby became the property of the county and a part of the Parkersburg and Elizabethtown turnpike road, and has so continued ever since. On July 10, 1888, the superstructure of said bridge was washed away by the high waters of said river; thereupon the County Court of said county, by its order made August 28, 1888, contracted with the Wrought Iron Bridge Company to rebuild the bridge on the abutments of the former bridge, for which the county agreed to pay said company $25,000.00, and of which it has paid $3,000.00. Afterwards the County Court was officially notified by the Secretary of War of the United States, that said bridge when rebuilt should be fifty seven feet seven inches above low water mark; that, then, the County Court neglected and refused to rebuild and repair said bridge at the foot of Market Street, and on July 2, 1889, without discontinuing or vacating said bridge, made an order locating a bridge across said river at the foot of Juliana street, about 110 yards from the site of the old bridge. Subsequently, on the bill of the Baltimore & O. R. R. Co., the Circuit Court of the United States enjoined the County Court from erecting a bridge at the foot of Juliana Street; and thereupon the County Court made another order locating a bridge across said river at the foot of George Street, about one mile above the foot of Market Street. The bridge at the foot of Market street can be erected at the height required by the Secretary of War, to wit, fifty seven feet seven inches above low-water mark across said river, and good approaches had to the same from both the North and South Sides of the river at far less cost than to any bridge that may be built at any other point within the limits of said City. The iron work contracted for with the said Wrought Iron Bridge Co., has been completed, and is lying at the shops of said company, in Ohio, and could be used to rebuild said bridge at the foot of Market Street. The County Court has contracted for erecting the stone work of the bridge at Juliana Street, and that the records of the said court

fail to show that any levy has been made to pay for same. The petition then charges, that said bridge at the foot of Market Street has been out of repair for about two years, and that more than eight months has elapsed since the notification of the Secretary of War in respect to the height at which said bridge must be built, yet the County Court has failed and refused to repair and rebuild said bridge on the old site at the foot of Market Street, and that the members of said court have publicly announced that they would not repair or rebuild said bridge on the said old location, but would build another bridge elsewhere in said city. The petitioners, therefore, pray, that a writ of *mandamus* be awarded, directed to the said County Court, and the individuals composing it, "requiring them to repair and rebuild the bridge across the Little Kanawha river at the foot of Market Street, of the said City of Parkersburg, and to cause the same to be placed in good repair and condition," and for further relief *etc.*

On October 21, 1889, the said petition was filed in the Circuit Court, and said court on that day made an order awarding the alternative writ of *mandamus*, which writ was afterwards issued and duly served on the defendants. The writ both in its recitals and command follows, substantially, the said petition. The defendants appeared and moved the court to quash the said alternative writ, which motion the court overruled and the defendants declining to make return or answer to said writ, the court on the motion of the petitioners awarded the peremptory writ, and the defendants obtained this writ of error.

Some question was made in the argument, whether there was a demurrer to, as well as a motion to quash, the alternative writ. The final order states, that the court "is of opinion to overrule said motion and said demurrer," but the record fails to show that any demurrer was entered by the defendants. In *Fisher* v. *Charleston*, 17 W. Va., at page 611 this Court says: "If the petition does not state the necessary facts to justify the issuing of an alternative writ or a rule neither ought to be issued, and if issued, on the return day this fatal defect should be taken advantage of not by demurrer, but by a motion to quash the alternative writ

or to discharge the rule as improvidently awarded. The petition and affidavit bear the *mandamus nisi* a relation similar to that which an affidavit bears to an attachment." And in another part of the opinion in the same case the Court says: " The defendant may move to quash the alternative writ, which is equivalent to a demurrer to it." Fromthis languageand the purport of the opinion, I infer that a motion to quash puts in issue not only the sufficiency of the alternative writ, but also the sufficiency of the petition on which such writ is based; and, therefore, if the defect, which the defendant seeks to take advantage of, is in the alternative writ, itself, and not in the petition, the formal mode of pleading is to demur and not move to quash, and *vice versa* if the defect is in the petition; but while this is the technical and formal mode of proceeding, the court will nevertheless treat a motion to quash the alternative writ, as the equivalent of a demurrer to such writ. The motion to quash in such case is not only the equivalent of a demurrer, but it reaches defects in the petition in like manner as such motion does the affidavit in an attachment. The motion to quash in this case, therefore, having all the effect of a demurrer and more, it is wholly immaterial whether there was or not, in fact, a demurrer in the record. Thus the only question to be determined in this case is, whether or not the court erred in overruling the defendants' motion to quash the alternative writ.

It is a well settled rule of pleading that a demurrer, or in a case like this, a motion to quash, admits as true only such allegations of the bill or writ as are well pleaded, and does not admit matters of law, legal conclusions and statutory construction.—*Dillon* v. *Barnard*, 21 Wall. 430 ; *United States* v. *Ames*, 99 U. S. 35.

It is unquestionable that *mandamus* will lie to compel the performance of duties purely ministerial in their nature, and so clear and specific that no element of discretion is permitted in their performance. But the authorities differ much as to what may be regarded ministerial and what discretionary or judicial duties.

In *Dawson* v. *Thurston*, 2 H. & M. at page 135, Tucker, J. says: "The County Courts in Virginia act in a variety of

capacities and characters. They are *judges* of all suits and controversies arising within their counties; either in actions at common law, or suits in chancery; or in controversies concerning wills, letters of administration, mills, *roads etc.*" In commenting upon this case, Green, J., in *Doolittle v. County Court,* says: "Under sec. 24, Art. VIII of our present Constitution, as it has been amended, the judicial powers of County Courts have been much limited. They are no longer judges of suits and controversies between individuals; either in actions at common law or in chancery. But they still posess certain *judicial powers* in controversies concerning wills, letttrs of administration, mills, *roads etc.* These, it has been decided, are judicial powers; and the performance of them in a particular manner can not be enforced by *mandamus.* That the County Court can not be compelled by *mandamus* to open a road. *Jones* v. *Justices etc.* 1 Leigh. 584. Except that their judicial powers have been limited, our County Courts under our amended constitution possess the same or even a greater variety of powers than they formerly did in Virginia. And hence it must often be inquired, what is the nature of the particular act done or refused to be done by them? Is such act judicial or ministerial in its nature? Upon the determination of these questions in these particular cases will often depend the right of the Circuit Court or of this Court to compel the performance of a specific act by the County Court by the writ of *mandamus.*" 28 W. Va. 178.

In *Henderson* v. *Smith,* 26 W. Va. 829, this Court decided, that the official act of a notary public in taking and certifying the privy examination of a married woman to a deed, is in the nature of a judicial act. And in *Wintz* v. *Board etc.,* 28 W. Va. 227, this Court held, that the Board of Education or its president, when acting under sec. 13, chap. 45 Code, has a discretion as to the approval or disapproval of the appointment of a teacher, which can not be controlled by *mandamus.*

In *Prohibition,* which is simply the converse of *mandamus* and governed by the same principles, this Court held in *Fleming* v. *Commissioners,* 31 W. Va. 608, that mere errors and irregularities of the County Court Commissioners, sit-

ting as a board of canvassers, and acting within their juris-diction, can not be corrected by prohibition.

.It is a well established rule both in *mandamus* and pro-hibition, that neither will lie where another specific and adequate remedy exists, nor to correct the errors of inferior courts in matters properly within their jurisdiction. It is a fundamental principle, that neither of these writs can be allowed to usurp the functions of a writ of error or *certiorari*, and can never be employed as a process for the correction of errors of inferior tribunals. High on Ex. L. Rem. §§ 156, 243; *State* v *McAuliffe*, 48 Mo. 112; *McConiha* v *Guthrie*, 21 W. Va. 134.

This Court has repeatedly decided, that *mandamus* will not lie to control the exercise of the discretion of any court, board or officer, when the act complained of is either judicial or *quasi* judicial in its nature. The inferior tribunal may be compelled to act in such cases, if it unreasonably neglects or refuses to do so, but the propriety of its action or the judg-ment it shall render can not be questioned or controlled by *mandamus*. It is sufficient that its discretion has been exer-cised, and whether rightly or wrongly, is wholly immaterial in this proceeding. *Satterlee* v. *Strider*, 31 W. Va. 789; *Doolittle* v. *County Court*, 28 W. Va. 158; *Wintz* v. *Board*, 28, W. Va. 227; *Supervisors* v. *Minturn*, 4 W. Va. 300.

Applying these principles to the case before us, the ques-tion presented is, do the facts alleged in the alternative writ show ground for relief by *mandamus?* And the answer to this question depends materially upon the fact, whether or not the particular act, which it is sought to compel the County Court to perform, is, according to the principles and author-ities before referred to, a judicial or discretionary act such as will not be enforced by *mandamus*. This particular act, as stated in the alternative writ, is to compel the County Court to repair and rebuild the bridge across the Little Kanawha river at the foot of Market Street of the City of Parkersburg.

The duties of the County Court in respect to county roads and bridges are found in chapters 39 and 43 of the Code of 1887. The relators in this case specially rely on section.23 chapter 39, which provides: "So far as any road, bridge or

public landing belongs to or is under the care or control of a county, it shall be the duty of the County Court to cause the same to be kept in good repair and condition."

Sections 35, 36, 37 and 38 of chap. 43, empowers the County Court to establish or alter any public road, bridge or landing, and prescribes the mode of proceeding for that purpose. After providing for the appointment of viewers to report the facts in respect to the necessity and propriety of the establishment or alteration of the road, bridge or landing, it provides : " Upon the report, *if the court be against the* proposed establishment or alteration, the petitioner shall pay the costs *etc.* * * * But unless the court upon such report *decide* against undertaking the proposed work, they shall appoint a day for hearing the parties interested, and cause notice to be given" *etc.* And then sec. 37 says : "At any time, if the court have enough before them *to enable them to ascertain* what would be a just compensation *etc.* * * * the said *court may determine* to undertake the work." And sec. 38 says : "When hearing the parties interested in an application for a public road, the County Court shall *decide for or against* undertaking the proposed work on behalf of the county. If it *decide* in favor of same" *etc.*

Section 30, chap. 43, authorizes the County Court, in the manner therein prescribed, to discontinue any county road or landing. Sec. 31 declares, that every county road, bridge and landing heretofore established and which has not been lawfully discontinued or vacated, shall continue as such until properly discontinued. "The roads, bridges and public landings transferred by the state to the several counties in which they are situated, shall hereafter be regarded as county roads, bridges and landings." And sec. 32, declares : "When any road is altered, the former road shall be discontinued to the extent of such alteration and no further, and the new one established.".

And sec. 25, chap. 43, provides that when a bridge is necessary within a county, and it is not practicable for the road surveyor to have it built or repaired with the means at his disposal, "the County Court of the county may contract for the same, or any part thereof, on such terms as may be agreed upon, * * * and pay for the work in whole or in part out of the county treasury" *etc.*

These seem to be all the provisions of our statutes bearing materially upon this controversy. If it be conceded, that the requirements of the aforesaid sec. 23 of chap. 39, taken alone as an isolated and complete regulation, could be enforced by *mandamus,* still the other sections of the statutes above referred to, show, that said 23d sec. can not be so treated. It and the said other sections must, upon any reasonable and fair rule of construction, be taken and held to be *in pari materia,* parts of one and the same general law for the establishment, alteration, keeping in repair and discontinuance of county roads, bridges and public landings. And when so taken and considered, it is scarcely possible to conceive how it could be made plainer than these provisions do, that the legislative purpose was and is to confer upon the County Court a judicial or, at least, a *quasi*-judicial power and discretion in respect to all these subjects, including the power to discontinue, or to alter the location of any bridge belonging to or under the control of the County Court. No analysis or collocation of these provisions could make that fact any plainer or more apparent than the simple reading of them will do. The plain fact, then, that the power of the County Court to discontinue, to repair or to alter the location of any county bridge, being a judicial power to be exercised by the Court according to its discretion, it is clear, under the principles hereintofore announced, that the exercise of that power can not be controlled by *mandamus.*

But it is claimed, that the statute does not authorize the discontinuance of a county bridge. It does not do so in express terms, but by implication it does so clearly. Sec. 31, chap. 43, provides, that every county road, bridge *etc.* shall continue until properly discontinued. And sec. 35 of same chapter provides for the alteration of a public road, bridge or landings. The context here clearly shows that the word "alteration" means the alteration of the location of the road, bridge or landing. If, then, as these sections provide, a bridge may be properly discontinued or its location altered, it must necessarily follow, that a bridge may be discontinued, and that the bridge, the location of which is so altered, may be abandoned.

It is further claimed, that even if it is true, that a bridge

may be discontinued it can only be done in the manner prescribed by the statute, and that the County Court has not attempted to do so. As before stated there is no express provision of the statute authorizing the discontinuance of a bridge, but by implication the statute does authorize the discontinuance of a bridge in the same manner that a county road may be discontinued. The alternative writ in this case avers, that the County Court has established and contracted to build a bridge across the river 110 yards below the site of the old bridge. This averment, it seems to me, is substantially and in fact simply an averment that the County Court has decided to alter the location of this bridge, and the statute, as above construed, provides that such alteration shall of itself discontinue the former bridge.

It is still further insisted, that the County Court has not established the bridge at Juliana Street in the manner prescribed by the statute. The averment in the alternative writ in respect to this matter, is in effect simply that the County Court has erroneously exercised its discretion. Its jurisdiction and power to change the location of the bridge is not questioned and it is unquestionable, as we have above shown. And this being true, *mandamus* does not lie to review the action of the court or to correct its errors or control the erroneous exercise of its discretion. That can be done only by appeal, writ of error or some other direct proceeding for the review and correction of such error. In this manner the action of the Court was reviewed in *Conrad v. Lewis County*, 10 W. Va. 784. The relators, as shown by the decision in that case had another adequate and complete remedy ; and for this reason also *mandamus* will not lie.

It is still further insisted that the County Court has already attempted to establish two bridges across said river, the one at Juliana Street and the other at George Street, and that it is thereby putting the relators and the other tax-payers of the county to great and unnecessary expense. This might be alleged as a ground for preventing the Court from incurring such useless expense, but it is certainly no sufficient ground for an application to compel it to build another and a third bridge across the same river.

And finally it is alleged in the alternative writ that the bridge at Market Street has been out of repair for about two years, yet the County Court has failed and refused to repair and rebuild said bridge on the old site, and that the members of the Court have publicly announced that they would not rebuild said bridge on the old location, but would build another bridge elsewhere in said city. The clear inference from this averment is not that the County Court refuse to build a bridge to replace the one destroyed, but that it has refused to build a bridge on the old site. But be this as it may, it distinctly appears from other parts of the alternative writ that the County Court has not refused to build a bridge to supply the needs of the one destroyed, but on the contrary, they have, considering the obstacles and difficulties they have encountered, been reasonably diligent in their efforts to build a bridge either on the old site or elsewhere in the city limits to supply the place of the former bridge.

It may be that the County Court has acted erroneously and even in disregard of the best interests of the people of the county, but having a discretionary power it can not, while legitimately exercising that power, however erroneously or contrary to the best interests of the county, be controlled by *mandamus*.

In *State* v. *Board of Commissioners*, 119 Ind. 444; (21 N. E. Rep. 1097) the court, in a case very similar to the one before us says: "Doubtless cases might arise in which it would be the imperative legal duty of the commissioners to afford the means or take the necessary steps to make repairs." *State* v. *Demaree*, 80 Ind. 519; *State* v. *Board*, Id. 478. "The facts found," says the court in that case, "fall far short of making the present such a case. For all that appears the stream may be crossed by means of a ford or ferry, or another bridge, as the evidence shows the fact to be, may have been built within a reasonably convenient distance from the one destroyed. * * * It appears from the facts found that the board of commissioners, in the exercise of its discretion, refused to order the bridge to be repaired. The present is, therefore, not a case where the commissioners refused to act, but is one in which they did not act in a manner to suit the relators, who now ask the court to com-

pel them to reverse their former action." So in the case at bar, the County Court did not refuse to act, but it determined to alter the location of the bridge. This does not suit the relators, and therefore their real grievance is not that the court refused to act, but that it refused to act to suit them, and they are now in effect asking the Court to reverse the action of the County Court. This can not be done by *mandamus.*

For the reasons aforesaid, the judgment of the Circuit Court must be reversed, the motion to quash the alternative writ sustained and the proceeding dismissed.

REVERSED.