# CHARLESTON.

## COUNTY COURT *v.* ARMSTRONG, JUDGE.

Submitted November 25, 1890.—Decided December 6, 1890.

1. BRIDGES—PARTIES—APPEAL.

Citizens and tax-payers merely as such having no special property or interest to be affected save in common with all other citizens and tax-payers can not become parties to a proceeding by a County Court to alter the location of and rebuild a county bridge, and can not sustain an appeal to review such proceeding under section 47, c. 39, Code 1887.

2. BRIDGES—APPEAL—PROHIBITION.

A Circuit Court can not entertain an appeal obtained in such case by such citizens and tax-payers, and a writ of prohibition will go to prohibit such Court from entertaining such an appeal.

3. BRIDGES—PARTIES—APPEAL.

To prosecute an appeal under said section 47, a person must have such interest to be affected that it may properly be said that he is aggrieved by the proceeding complained of.

*J. B. Jackson, Van Winkle & Ambler* and *J. A. Hutchinson* for petitioners.

*J. M. Jackson* for respondents.

BRANNON, JUDGE:

This is an application to this Court by the County Court of Wood county for a writ of prohibition to prohibit the Honorable V. S. ARMSTRONG, judge of the sixth circuit, and the Circuit Court of Wood county, and Hon. ARTHUR I. BOREMAN, its judge, and Calvin Campbell and other persons, from proceeding further with a certain appeal and *supersedeas* granted by the said judge of the sixth circuit on the application of Campbell and others from and to certain orders of the County Court of Wood county, touching the location of a bridge across the Little Kanawha River at Parkersburg. A rule has issued to show cause why such prohibition should not issue, and the defendants have appeared and filed their answer to the rule containing a motion to discharge it and other defences. A bridge over the

Little Kanawha River on the Elizabeth and Parkesburg turnpike was washed away in 1888, and the County Court took steps for rebuilding it on the abutments on which stood the former bridge at the foot of Market street in the city of Parkersburg, and later changed its location to the foot of Juliana street, and later to Geays street, and later ordered that it be built at Juliana street, and took steps in the process of its construction. Then certain citizens and tax-payers of Wood county, desiring the bridge to be rebuilt on the site of the old bridge at the foot of Market street, obtained from the Circuit Court of Wood county a writ of *mandamus* compelling the County Court to rebuild the bridge on the old site; but the County Court brought the case to this Court, and this Court reversed the action of the circuit court, this Court holding that the county court could not be compelled to rebuild when it appeared that it had decided to build a bridge elsewhere than on the old site, thus deciding to change the location of the former bridge, because the law vested the county court with a *quasi* judicial jurisdiction in the matter of roads and bridges, to be exercised according to its discretion, and it could not be controlled in the manner of its exercise of discretion by *mandamus*, and the Court would not on *mandamus* inquire into the regularity of its proceedings. The report of this decision will be found in 33 W. Va. 589, and 11 S. E. Rep. 72, under the title of *State* v. *County Court*. Subsequently certain citizens and tax-payers obtained from the Circuit Court of Wood county a writ of *certiorari* to review the proceedings of the County Court culminating in the order locating and building the bridge at the foot of Juliana street, and to reverse the same. Thereupon, the County Court obtained from this Court a writ of prohibition prohibiting the Circuit Court of Wood county from further entertaining or proceeding with the writ of *certiorari*. Our decision then made is under the title of *County Court* v. *Boreman*, *supra* page 87. After this decision, Calvin Campbell and other citizens and tax-payers of Wood county presented to said County Court a petition representing that they were aggrieved by the several orders of the county court in the bridge proceeding, especially the order of July

2; 1889, locating the bridge at the foot of Juliana street, specifying certain alleged errors in the proceeding, and asking to be made parties to the proceeding, and that they might be heard in opposition to the location of the bridge at Juliana street instead of Market street, and that the orders in the matter, particularly that of July 2, 1889, locating the bridge at Juliana street, be set aside, and that the court rebuild the bridge at the foot of Market street with a draw to rest on the old piers and abutments; and the County Court on the 9th of August, 1890, entered an order stating at large the reasons for the action it took upon said petition, which action was that the court refused to entertain the petition, or to allow petitioners to become parties to said proceedings, or to set aside previous orders as to the construction of the bridge. Then Calvin Campbell and others of those who presented said petition to the County Court applied to the Honorable V. S. ARMSTRONG, judge of the sixth circuit, and obtained an appeal from the orders of said County Court locating and ordering the construction of said bridge at Juliana street, and discontinuing it at Market street, for the purpose of reversing such orders, and a *supersedeas* was also allowed with the appeal, thus superseding the execution of said County Court orders. Afterwards, as stated above, the County Court applied to this Court to prohibit, by writ of prohibition, the entertainment and prosecution in the Circuit Court of Wood of the said appeal and *supersedeas* allowed by Judge ARMSTRONG. The facts in the protracted litigation as to this bridge are very numerous; but the above recital gives all that are deemed material on this occasion, and brings us now to the decision of the question, shall the prohibition be awarded?

The state constitution confers on County Courts jurisdiction in the establishment and regulation of roads, ways, and bridges. Statute law provides various regulations designed to execute and carry out the jurisdiction conferred by the constitution, vesting it with power to establish, alter and discontinue roads and bridges in the manner therein prescribed. See sections 35-38, c. 43, Code 1887. Section 25 provides that when a bridge is necessary, and can not

be built by the road surveyor, the County Court may contract and pay for the same. The powers thus given are judicial or *quasi* judicial, and to be exercised according to the discretion of that court. See *State* v. *County Court,* 33 W. Va. 589 (11 S. E. Rep. 72). This is an important function for the public welfare reposed in the County Court, and in that function it represents the public—acts for it. This being so, can any one or more citizens, simply because they are, with thousands of others, citizens and tax-payers, challenge the wisdom or discretion of the County Court only because they may differ in judgment with it as to the propriety of building a bridge at a certain place, or changing the location of a bridge destroyed? The statement of the question gives a ready answer in the negative. Can they appear and become parties to such a proceeding, and litigate it through all legal stages? If so, every act of establishment or alteration of a road or building of a bridge, petty or important, would beget a lawsuit, and the construction of these important works, constituting important acts in governmental administration, would often be hindered and thwarted to the great harm of the public. These citizens and tax-payers are only such; they have no property condemned or damaged by the County Court for the bridge. They can not maintain the appeal because they have no private property interest affected, and because of the nature of the proceeding they would litigate. These two considerations compel us to say they have no *locus in curia,* no standing in court. It is settled that nobody can sustain an appeal to correct error unless he be aggrieved, and these citizens as such merely have no such interest as can be aggrieved. This principle was fully stated by Judge Lucas, in delivering the opinion of the Court in *County Court* v. *Boreman, supra* page 87.' The said citizens, Campbell and others, sought to make themselves parties by presenting their petition to the County Court to review its proceedings, seeming to think that thus they would secure a *status* which would enable them to appeal to the Circuit Court in case of refusal of the County Court to retrace its steps ; and they contend here that the syllabus and opinion in *County Court* v. *Boreman* justify that position, because

42

the syllabus states that "private citizens who have no special property or interest to be affected, acting on their own behalf, and that of other citizens who have not made themselves litigants, nor submitted any motion, nor taken any exceptions before the County Court when the latter is conducting proceedings to alter the location of and rebuild a county bridge, can not review the action of said County Court by *certiorari*; and a judge of the Circuit Court has no jurisdiction or authority to issue any such writ in such case;" and because the opinion uses the language in reference to such citizens prosecuting said *certiorari*, "so far as the record discloses, they have never appeared before the County Court and moved to set aside its order establishing the new location and discontinuing the old, nor for any other purpose." Now, this effort to justify the appeal by the case of *County Court* v. *Boreman*, is by no means plausible. The parties up to that time had never appeared in the County Court, and that alone was the reason, though only an additional reason, for denying their right to maintain the *certiorari* as an appellate process, and the Court used language suiting the case as it then stood, as it was not required to say what would be the case if they had appeared in the County Court; and merely because the Court said that the Circuit Court could not entertain a *certiorari* sued out by parties who did not appear in the County Court, the converse, that is—that if they had so appeared they could maintain *certiorari*—does not follow, as the converse of stated propositions does not in logic or law always follow. The whole spirit of the opinion by Judge LUCAS, in view of the functions he ascribed to the County Court in bridge matters, and denying mere citizens the right to challenge its action, and the opinion taken as a whole tends to the opposite position, that is that even if these citizens had appeared in the County Court they could not have a *certiorari*; and that such was his opinion is clear by language used by him as follows: "Even if it were possible for these six private citizens who have obtained the writ of *certiorari* to make themselves parties, as the law now stands, to a proceeding under section 35 of chapter 43 of the Code by the County Court to alter or establish a

bridge, they have not taken any proper steps to do so." The case of *County Court* v. *Boreman* did not necessarily call upon the Court to hold that citizens and tax-payers merely as such could not litigate with the County Court its proceeding to locate or change the location of a bridge ; but its fair construction and import is to that conclusion.   But this case does afford us the occasion, and we think it essential to the public interests, as involved in the execution by county courts of the important functions assigned them by law touching roads and bridges, that we should decide, as we now do, that citizens and tax-payers, merely because they are such, who have no special property or interest affected thereby, can not become parties to proceedings by county courts for the establishment, location, or alteration or construction of county roads and bridges, and can not appeal from the action of the County Court therein. Under any other rule, it would be impossible to say when litigation would occur, when it would end, what would be the public cost, or what would be the delay and obstruction in these matters so essential to the public welfare.   In deciding the case of *County Court* v. *Boreman,* we were greatly influenced by the case of *Supervisors* v. *Gorrell,* 20 Gratt. 484, which holds that when the supervisors were proceeding to condemn land for a court-house, and the land-owners did not object, other citizens and tax-payers could not make themselves parties in the proceeding, and the Circuit Court could not on their motion award a writ of error and *supersedeas* to the action of the County Court refusing to admit them as parties, and was without jurisdiction to revise the action of the County Court, and awarded a prohibition to inhibit the Circuit Court from going on with the writ of error.

We now here hold, as did the Virginia court of appeals, as appears from the opinion by MONCURE, P., that the Circuit Court of Wood county has no jurisdiction to entertain this appeal for two reasons :   (1) Because said citizen appellants were not in legal sense parties to the proceeding in that court; and (2) the policy and provisions of the constitution, and statutes concerning it, forbid that such appeal and *supersedeas* should lie in such a case. I do not forget that section 47, c. 39, Code 1887, provides that an appeal shall

lie to the Circuit Court from the final order of the County Court in cases of the establishment of a road, way, or bridge, and by section 48 that in such case a "party" may take an exception, and that section 14, c. 112, provides that in such case a "party" may present a petition for such appeal. True, the word "party" is here used; but who is or can be a party? Not anybody who wishes, and who has no interest. To entitle a person to appeal from a judgment he must be a party, and be aggrieved by it; that is, have such interest affected by it as that we say he is personally and as an individual aggrieved, not merely in common, with the whole country. *Supervisors* v. *Gorrell*, *supra;* Pow. App. Proc. 105, 272; 1 Rob. Pr. (old) 665; *Sayre* v. *Grymes*, 1 Hen. & M. 404; *Winfield* v. *Crenshaw*, 3 Hen. & M. 245; 2 Tuck. Bl. Comm. 325. As to the contention that prohibition is not a proper remedy, we regard that settled by the decision in *County Court* v. *Boreman*, *supra*. We see no reason for receding from that case, and we think it settles this case. The writ of prohibition is awarded against all the defendants except Judge ARMSTRONG, whom the plaintiff has dismissed from the case, with costs against Campbell and others who took the appeal, but not against Judge BOREMAN.

WRIT AWARDED EXCEPT AGAINST ARMSTRONG.