# CHARLESTON.

STATE *ex rel.* MATHENY *v.* COUNTY COURT OF WYOMING COUNTY *et al.*

Submitted January 17, 1900.—Decided March 31, 1900.

1. MANDAMUS—*Parties.*
    A proceeding in *mandamus* is a civil proceeding,—a common-law process,—which may be in the name of the State at the relation of an individual, or simply in the name of the individual as plaintiff; that individual being in either case the real plaintiff.   (p. 674).

2. CITIZENS OF COUNTY—*Interest.*
    Citizens or taxpayers of a county may, merely by reason of their interest as such, maintain *mandamus*, in a proper case, to compel a county court to construct a new or repair an old court house.   (p. 675).

3. MANDAMUS—*Return—Bar.*
    Where a return to an alternative *mandamus* sets up new matter, good as a bar, the plaintiff must file a replication; else, such return will be taken as true, and call for judgment. junction, even though the applicant for *mandamus* is not a of *non pros.*, dismissing the *mandamus.*   (p. 676).

4. PLEADING—*New Matter—Answer.*
    Any pleading setting up new matter, good in law, is taken for true. if not answered.   (p. 677).

5. MANDAMUS—*Injunction—Party.*
    A *mandamus* will not go to compel a party to violate an injunction, even though the applicant for *mandamus* is not a party to the injunction.   (p. 679).

6. MANDAMUS—*Legal Right.*
    A *mandamus* will go only to secure or protect a clear legal right, and not to accomplish a wrong, or the violation of the constitution.   (p. 679.)

7. MANDAMUS—*Power—Performance.*
    *Mandamus* will not go, if it would prove fruitless or impossible of performance, or beyond the power or means of the party to whom he is directed to perform its commands.   (p. 680).

8. MANDAMUS—*Taxation—Debt.*
    A *mandamus* will not go to compel a county court to build a new court house, when its construction would impose a debt.

on the county beyond the means that can be raised by taxation, within the legal limit of taxation on the assessed valuation of property.     (p. 680).

9. New Court House—*Removal County Seat.*
    A county court will not be compelled by *mandamus* to build a new court house pending a proceeding to remove the county seat.     (p. 680).

Error to Circuit Court, Mingo County.

*Mandamus* by the State, on the relation of M. F. Matheny, against the county court of Wyoming County and another, to compel the building of a court house. Judgment awarding the writ, and defendants bring error.

*Reversed.*

A. W. Reynolds and John M. McGrath, for plaintiffs in error.

H. K. Shumate, for defendant in error.

Brannon, Judge:

M. F. Matheny, prosecuting attorney of Wyoming County, on behalf of himself as such, and as a citizen and taxpayer of said county, as well as for other citizens and taxpayers thereof, sued out an alternative writ of *mandamus* against the county court of that county, and the commissioners (by name) composing it, with the object of compelling the court to build a new court house for that county. The defendants filed a return setting up various facts in bar of the writ, and a jury trial was had, resulting in a verdict for the plaintiff, the State of West Virginia at. the relation of said Matheny, and a judgment awarding a writ of peremptory *mandamus* compelling the county court to build such court house, from which judgment the county court obtained this writ of error. Matheny moved. the court to dismiss the said writ, and thereupon Lewis. B. Cook, George Chambers and F. B. Roach, stated in the order of the court to be resident citizens and taxpayers of the county, asked leave to be made relators in the case, and that it be prosecuted in their name and at their cost, in behalf of themselves and other citizens and taxpayers of the county; and the court dismissed the case as to Ma-

theny, both as citizen and prosecuting attorney, and ordered that the case be thereafter proceeded in in the name of and on behalf of said Cook, Chambers and Roach, as citizens and taxpayers as relators, and the other citizens and taxpayers of the county. Afterwards the county court moved the court to quash the alternative *mandamus* for the reason that it should not have been revived in the names of Cook, Chambers and Roach, without notice to the county court, but the court overruled the motion to quash.

One point of exception to the judgment is this refusal of the court to quash the writ. It is laid down in that very late and excellent work, 13 Enc. Pl. & Prac., which contains an elaborate and excellent treatise on *Mandamus*, at page 755, that: "When the relator in *mandamus* is the real party in interest, his death operates as an abatement of the action . Where the relator is a public officer, his death does not affect the proceedings, as they may be continued by his successor." It would seem plain that the writ cannot be revived by a personal representative after the death of the relator, as a general rule. I would say, however, that depends upon the right involved. Considering it a civil suit, as I do consider *mandamus*, I would think that, if the case happened to be one involving a right of property, it might be revived and prosecuted in the name of the personal or real representative of the deceased relator or plaintiff, as the case might concern personal or real property. In such a case as this, it seems to me, it could not be revived in case of death. Still, that does not show, but may tend somewhat to show that, as it could not be revived in the name of a representative (High, Extr. Rem. § 437), so, if the real plaintiff dismisses his suit, it could not be continued in the name of a substituted plaintiff, deriving no interest from the former plaintiff. Who is the real plaintiff in a writ of *mandamus*? I answer, the relator, not the State. It is true that the case of *State* v. *Long*, 37 W. Va. 266, (16 S. E. 578), tells us that the alternative writ should run in the name of the State, and that it should be entitled, "The State, at the Relation of (the petitioner,) against (the respondent;)" but it is also stated there that the practice in this State of entitling the cause in the name of the relator, as plaintiff, prevails. JUDGE LUCAS cites

several cases showing this.   So that a writ of *mandamus* may be either in the name of the State of West Virginia, at the relation of a named individual, or merely in the name of that individual as plaintiff.   I think that chapter 109 of the Code, and the case of *Fisher* v. *City of Charleston,* 17 W. Va. 595, and all other West Virginia cases, make this writ a civil action, purely.   It is no longer a prerogative writ, any more than an action of debt; for, if a petition show a right in the person to the writ, he is entitled to it as a matter of right.   In any view, the State is a mere figurehead, a nominal party, and Matheny was the real plaintiff; and it seems to me that, when he dismissed the suit, he being the only person named as plaintiff, the suit came to an end. Can mere citizens and taxpayers maintain a *mandamus* to enforce upon public officials the performance of public duties in matters concerning the public right?   It would seem impolitic to allow every individual to interpose himself in public administration,—to intermeddle in it,—and thus produce litigation concerning public matters committed to public functionaries, except in cases where the attorney general or prosecuting attorney, or other officer to whom it falls by law to compel the performance of such public duty, refuses.   There is great conflict of authority on the point.   13 Enc. Pl. & Prac. 630, says, that in the greater number of states a private relator, even where the matter concerns public right, must show a special interest in himself, while High, Extr. Rem. § 431, states that, though there is conflict, yet the preponderance of authority favors the right of an individual to the writ in cases touching the public right.   In this State, I think the case of *State* v. *County Court,* 33 W. Va. 589 (11 S. E. 72), warrants the right of citizens and taxpayers, interested only as such, to have recourse to *mandamus* to enforce a public right.   Still, that does not show that, when Matheny abandoned his writ, there was any right in Cook, Chambers and Roach to take up the cause, though Matheny had sued in behalf of all taxpayers.   They must sue out a separate writ, showing cause and right for the same.

But, if I be wrong in this, the court erred in its procedure to revive. It revived without any notice to the county court, and in its absence, and before the day on which the

cause had been set for trial. When a suit abates, a *scire facias* to revive it must be awarded. When these parties proposed to have the cause, upon its dismissal in Matheny's name, go on in their names, why was not the defense entitled to notice, so that they might contest the important step of continuing the case in the name of these substituted parties? The defense was entitled to call upon them to show that they were citizens and taxpayers entitled to prosecute the case, and the defense was entitled to show legal grounds why they should not be allowed to do so. These parties offered no evidence to prove their right to sue, by affidavits or otherwise, as would be required of them if applying for a writ of their own. High, Extr. Rem. § 10. This point is virtually decided in *Fisher* v. *City of Charleston*, 17 W. Va. 627, where the court held it error to revive a case against new councilmen of the city, without notice to the adverse party.

Second point: The alternative *mandamus* alleges as the ground for the relief it seeks, that the present court house of Wyoming County is insufficient, and the return to it made by the county court denies that allegation of the *mandamus* and thus raises an issue upon the matter alleged in the writ; and it would seem that as to that matter no replication is necessary, since it could only be a general replication, and no *similiter* is required. But that return contains additional new matter set up in bar of the *mandamus*. It states that the county court in June, 1893, was about to erect a new court house at Oceana, the then and present county seat, and was enjoined from so doing by an injunction from the circuit court of Wyoming County, and that said injunction was still pending and in full force. It states as a further defense that afterwards, in November, 1893, the county court was taking steps to repair the present court house, so as to improve it for public use, and that in December, 1893, said circuit court awarded an injunction against the county court, restraining it altogether from making such repairs, and that this injunction still stood in full force. As a further defense the said return states that, upon the basis of the assessed property valuation for tax purposes in Wyoming County, a levy up to the highest limit allowed by law would not pay current expenses, and

furnish money to build such a new court house as the law now requries; and that, to raise money for such court house, it would be indispensable to have the authority of a vote of the people to create a debt on the county by the issue of bonds pursuant to the constitution, and that in 1894 the county court submitted to the people the proposition to issue the county's bonds to build a new court house, and that the proposition was defeated.   The return, as further defense, stated that there was at its date a petition in circulation among the voters of Wyoming County praying the relocation of the county seat from Oceana to a place called "Jesse," and that the petition had been signed by more than two-fifths of the voters, and that it would be presented at the next term of the county court, and that the county court, did not, under such circumstances, deem it advisable, expedient, or proper to build another court house at the present county seat until after the question of the removal of the county seat had been voted upon.   Now, if these additional defenses are good in law they required a replication from the plaintiff.   No replication was filed to the return, or to any part of it.   A demurrer to the return was filed and overruled, the court thus holding the return a good bar to the writ of *mandamus*, but there was no replication of fact.   Therefore, under the rules of pleading, these new matters above specified must be taken as confessed for all the purposes of this case.   It is an admission of their truthfulness.   Steph. Pl. 216, says that "the effect of such admission is extremely strong; for, first, it concludes the party, even though the jury should improperly go out of the issue, and find the contrary of what is thus confessed on the record."   4 Minor, Inst. 913, says that the pleader admits, "for the purpose of the pending action, such of his adversary's averments as he does not deny."   This principle is discussed in *Henry* v. *Railroad Co.*, 40 W. Va. 235, (21 S. E. 863), and in *McMillion* v. *Dobbins*, 9 Leigh 423.   Thus, if these new points of defense be good, being admitted, in the absence of a replication, they called for judgment of dismissal by *non prosequitur. Henry* v. *Railroad Co., supra.*   Under that case, where there are two or more pleas, and one is good, though others be bad or found untrue, yet that defeats the action.   Therefore,

no matter how the truth is on the issue made by the writ of *mandamus* and the return as to whether the present court house is sufficient or insufficient, the additional bar presented in the return would defeat the award of a peremptory· *mandamus*. From this two results follow. One is that it was error to try the case by a jury, as was done, instead of entering a judgment by *non pros.*, dismissing the action; and the second result is that the verdict of the jury was found without any issue upon important matters presented as new matters in the return, and found their verdict in the teeth of and contrary to the admission of the truth of such new matters, by failure of the plaintiffs to make replication thereto. When the demurrer was overruled the plaintiffs were under obligation to file a replication, or have the return taken for true. "The proceeding may be dismissed where the relator fails to reply to the answer or file any further pleading." 13 Enc. Pl. & Prac. 795. Hogg, Pl. & Forms, § 283, properly states the invariable and logical rule of pleading when it says: "As we have already seen, the sufficiency of the plea as a valid or proper defense should be tested by motion to reject, to strike out, or by demurrer; and when this is done, and the plea is filed, then the plaintiff must take issue thereon, or make general or special replication thereto." So the defendant was entitled, when that demurrer to the return was overruled, to a dismissal of the *mandamus*, simply because the return, as to material points, was confessed as true. In addition, the verdict, being without any issue, is void, under numerous decisions. *Ruffner* v. *Hill*, 21 W. Va. 152. As I stated in *Henry* v. *Railroad Co.*, *supra*, the mere fact that the record states that the jury was sworn to try the issue, does not show that there was an issue proper, when the record does not show pleadings indispensable to raise the proper issues. This rule that a trial is abortive without an issue is well settled in the courts of record, though we have relaxed it in some cases before justices. It seems a very harsh rule, and technical, where, as in this case, both sides went on with the trial as if there were an issue; but the rule is very strong and solid, under the many decisions supporting it. In *Simpkins* v. *White*, 43 W. Va. 125, (27 S. E. 241), I criticised the rule, as I see

JUDGE HAYMOND did in *Griffe* v. *McCoy*, 8 W. Va. 201. But note that, as I said in *Henry* v. *Railroad Co.*, 40 W. Va. 240, (21 S. E. 863), the party who is guilty of the fault of failure to file such a pleading as raises an issue can with little grace complain of the rule. In this case the plaintiffs brought this trouble to themselves. It follows that the verdict for the plaintiffs was irregular and void, because without an issue, and because contradictory of the facts admitted by the failure of the plaintiffs to put in a replication to the return. The verdict should have been set aside, and the case dismissed.

Another point: The above holding is predicated upon the theory that the new matter above specified contained in the return constitutes a good bar to the *mandamus nisi*. Is this so? The county court had been enjoined from doing the very thing which this *mandamus* sought to compel it to do. It sought to compel that court to violate an injunction. It is laid down in 13 Enc. Pl. & Prac. 729, that "an injunction issued before the application for the writ (*mandamus*), enjoining the doing of the very acts sought to be compelled by the *mandamus*, is a sufficient defense." This rule is well sustained by authority. 14 Am. & Eng. Enc. Law, 105; High, Extr. Rem. § 23; 2 Spell. Extr. Relief, § 1402; *Ohio & I. R. Co.* v. *Wyandot Co. Com'rs*, 7 Ohio St. 278. In the last case the holding was, "The court will not, by *mandamus*, compel a party to do what by a subsisting decree of injunction he is prohibited from doing, although the party seeking the *mandamus* is not a party to the injunction." I think, however, that the injunction against a county court binds every citizen of the county, because that court represents every citizen, in the matter of the construction of a court house. Again, Article X., § 8, of the Constitution prohibits a county from the contraction of a debt, except by a vote of the people. This *mandamus* would compel the county court to violate this provision, which would be obviously improper. No citizen has a right to ask the court to contract such a debt without the assent of the people. Iu *People* v. *State Board of Canvassers*, 129 N. Y. 360, 29 N. E. 345, it is held: "A party can demand a *mandamus* only to secure or protect a clear legal right, never to accomplish a wrong or the violation of a con-

stitutional provision." If the county court obeyed the Constitution and statute law, it would have to disregard the *mandamus*, if issued. The award of the *mandamus* placed the county court "between two fires." If it obeyed the *mandamus* it must disregard an injunction and the Constitution. If it disregard the *mandamus*, it would be in contempt. Legally speaking, the *mandamus* would be in vain. There was no money with which to comply with it within the power of the county court. "It is a fundamental principle of the law of *mandamus* that the writ will never be granted in cases where, if issued, it would prove unavailing. \* \* \* The solemn mandate of a court of justice should never be invoked to an end that is obviously useless." 14 Am. & Eng. Enc. Law, 104. Likewise, High, Extr. Rem. § 14; 2 Barton, Law Prac. 1213; 4 Minor, Inst. 331; 2 Spell. Extr. Relief, § 1377.

Again: It seems to me that the county court would not be bound to build a new court house at Oceana, if for no other reason, while the relocation of the county seat was not only in contemplation, but a petition had already been signed, ready to be presented to the county court, for a vote of the people on the removal of the county seat. It seems to me that the county court had, under such particular circumstances, discretion to postpone for a reasonable time action on the matter.

The defendant made a motion in arrest of judgment, which was overruled, but which should have been sustained. The principles above stated require us to reverse the judgment, and, rendering such judgment as the circuit court should have rendered, to arrest judgment upon the verdict, and set aside that verdict, and enter a judgment of *non pros.*, dismissing the alternative *mandamus*, with costs to the county court in both courts against Cook, Chambers and Roach.

*Reversed.*