# SEPTEMBER TERM.

## CHARLES TOWN.

STATE *ex rel.* WAYNE COUNTY COURT *v.* HERRALD, COMMISSIONER.

Submitted Sept. 12, 1892.—Decided Sept. 17, 1892.

1. MANDAMUS—TAXATION—RE-ASSESSMENT.

Under that portion of section 4, c. 36, Acts 1891, which provides that a commissioner appointed to reassess the real estate in any county, "in ascertaining and fixing the value of any land within the limits of any city, town or village, when laid off into or offered for sale in lots, and when in any case land is laid off into lots, the said commissioner shall adopt as the value of such land the value thereof as so laid off into such lots, valuing the same by the lot, and not by the acre or tract," the duty thus imposed upon such commissioner is a ministerial duty, and a compliance therewith may be controlled by a *mandamus.*

2. MANDAMUS—TAXATION—RE-ASSESSMENT—DISCRETION.

*Mandamus* is the proper remedy to compel such commissioner to assess lands which have been laid off into town lots as lots, and not as farming land; and, while the exercise of official discretion will not be controlled by *mandamus*, yet *mandamus* is proper to compel the commissioner to exercise his discretion.

*Simms & Enslow* for plaintiffs in error cited the following authorities:

1.—*The duty of the commissioner to assess the lots as such.*—Const. Art. X., s. 1; 19 W. Va. 408; Acts 1891, p. 61.

2.—*Can the Commissioner to assess land be compelled by mandamus to value it as directed by statute?*—54 Ill. 39; 2 Dill. Mun. Corp. § 832; 24 W. Va. 385; 12 Pet. 526; 2 Mon. 243;. High Ex. Leg. Rem. 130; 1 Johns. 549; 6 B. & C. 181; 15 Gratt. 459; 25 Gratt. 817; 14 East 395; 8 Lea 594; 54 Cal. 353; 40 Md. 273; 19 Ohio 178; 31 Me. 285; 5 Pick. 329.

3.—*Can the County Court sue out the writ as relator?*—Const. Art. VIII, s. 24; 25 Me. 291; 28 Pa. 108; 37 N. Y. 344;

19 Wend. 56; 1 Otto 343; 54 Cal. 353; 24 W. Va. 386, 9th p't. Syll.; Short *Mand.* 242.

*Vinton & McDonald* and *J. B. Laidley* for defendant in error.

1—*No right of action in the County Court.*—High Ex. Rem. § 431; Id. 435; 19 Wend. 56; 37 N. Y. 344; Coo. Const. Lim. 521, 522, n.; 16 Ohio St. 308, 321; 7 Ohio St. 1, 232.

2—*The action enjoined upon the commissioner is judicial, not ministerial; and therefore mandamus does not lie.*—33 W. Va. 589, 595, Syll. p't. 4; High Ex. Rem. §§ 156, 243; 4 W. Va. 300 Syll. p't. 2, 3; 34 W. Va. 285; 26 W. Va. 829.

ENGLISH, JUDGE:

This was a proceeding by way of *mandamus* in the name of the State of West Virginia at the relation of the County Court of Wayne county, instituted in the Circuit Court of Wayne county, to compel one Stephen Herrald, who had been appointed by the Board of Public Works of said State, to reassess for taxation all the land in the first assessment district of said county to reassess a portion of a tract of land containing three hundred and eight acres, more or less, owned by R. H. Prichard, trustee, and lying between the west line of Cabell county and Twelve Pole creek, in Wayne county, all of the upper or high bottom land of which tract has been laid off into streets, alleys, and town lots; and at the time said Herrald, as commissioner, was proceeding to reassess said land, the said R. H. Prichard, through the Huntington & Kenova Land Development Company, was engaged in selling and offering for sale any and all of said lots so laid off and platted, the same being known as the "Town of Kellogg," in said Wayne county. Such being the case, said County Court of Wayne county, before it would receive the books from said assessor, required that he, the said Stephen Herrald, should place upon the books for the said assessment district the said several lots in the town of Kellogg in Blocks Nos. 1 to 140, inclusive, as town lots, and not assess the same by the acre as farming land, which the said Stephen Herrald then and there refused to do, and placed the same upon the land

books as reassessed and revalued by him as seventy five
acres at one hundred and thirty eight dollars per acre, one
hundred and eighteen acres at one hundred dollars per acre,
and the balance, with the hill land adjoining, assessed as
one hundred and fifty seven acres at seventy five dollars
per acre, and one hundred and ninety acres at eighty three
dollars; thus valuing the said lands as acres, and not as lots,
or at lot prices.

These facts were set forth by the relator in its petition
for the writ of *mandamus*, and it was also alleged therein
that the fair valuation of said land at lot prices, as pro-
vided by the reassessment law, would be seventy three
thousand five hundred and sixty dollars, and that six hun-
dred and forty nine lots in blocks Nos. 1 to 30, and two hun-
dred and forty five lots in blocks Nos. 53 to 64, and three
hundred and twenty lots in blocks Nos. 67 to 72, as laid
down on the plat and map of the town of Kellogg, are
worth for taxation, and should be assessed, at least at twenty
dollars per lot; that one hundred and ninety two lots in
blocks Nos. 73 to 76, inclusive, three hundred and ninety
eight lots in blocks Nos. 81 to 93, inclusive, four hundred
and thirty two lots in blocks Nos. 96 to 109, inclusive, four
hundred and forty eight lots in blocks Nos. 112 to 125, in-
clusive, two hundred and twenty four lots in blocks Nos.
128 to 135, inclusive, and one hundred and twelve lots in
blocks Nos. 136 to 140, inclusive, are worth and should be
taxed at thirty dollars per lot, making a total of nine hun-
dred and sixty nine lots at twenty dollars per lot, and one
thousand eight hundred and six lots at thirty dollars per
lot ; making a difference in the assessed values between the
land as assessed by the acre and what it should be assessed
by the lot of fifty thousand dollars, at least, thereby depriv-
ing the State and the relator of the revenue that they are
entitled to.

To this petition the defendant, Stephen Herrald, demur-
red, and on the 4th day of June, 1892, the court having
considered the matters of law arising upon said demurrer
sustained the same, and dismissed said writ and petition,
and from this judgment the said relator applied for and ob-
tained this writ of error.

The first error assigned by the plaintiff in error is that the court erred in sustaining defendant's demurrer to the plaintiff's petition and writ, and in entering up judgment dismissing the case. Did the court below act properly in sustaining said demurrer? It is contended by counsel for the defendant in error that the County court had no authority by statute, express or implied, to make itself a relator in said proceeding, and had no individual or beneficial interest in the action.

In determining the question as to whether the County Court of Wayne county had the right to institute this proceeding, we notice first that the constitution provides that the County Courts "shall, under such regulations as may be prescribed by law, have the superintendence and administration of the internal police and fiscal affairs of their counties;" and, referring to the act of the legislature, chapter 36 of the Acts of 1891, p. 63, § 6, prescribing the duties of commissioners appointed for the reassessment of real estate, we find that, as soon as the commissioner shall have completed the assessment in his district, he shall make three copies thereof in the books so furnished him under section 3 of said act, and, after appending to each of said books the oath therein prescribed, two of said books shall be filed by the commissioner with the clerk of the County Court of his county on or before the 1st day of January, 1892, and shall be used by the said clerk as a guide in making up his land-books. "* * * In any county in which there are two assessment districts, the County Court of such county shall examine said books, and see if there is inequality in said assessment as between the districts, and make such order as will correct such inequality."

It will be perceived that the object and intention of this statute was that farming lands and town lots should be assessed separately, and it is incumbent upon the commissioner appointed to assess real estate that he should so assess real estate in order that the clerk of the County Court, in preparing his land-books under the supervision of the County Court, may do so in accordance with the requirements of the statute; and this provision of the statute was evidently intended to enable the clerk of the County

Court, under the supervision of said court, to properly make out said land-books.

We find the rule laid down as to who is entitled to be the relator in applying for the rule in Topping on Mandamus, p. 338, as follows : "The application for the rule," *etc.*, "must be made by him or them who has or have the immediate right to the subject-matter of the writ;" and on the same page : "When an application is made, the object of which is to obtain the benefit of certain provisions of an act of parliament," *etc.*, "those for whose benefit such provisions were inserted in the act should be the applicants for the rule, although they may be neither specially nor nominally mentioned;" and on page 339 : "In certain cases, where no particular person has been interested, the court has granted the writ in order to avoid a defect of police."

Now, the county of Wayne had a direct and immediate interest in having its lands and town lots assessed in accordance with the requirements of the statute; and the County Court, having the "superintendence and administration of the internal police and fiscal affairs of their counties," would have such an interest as would entitle it to institute this proceeding.

Section 36 of chapter 29 of the Code provides that "the clerk of the County Court shall make out the land-book, including all extensions, in such form as the auditor may prescribe, showing for each magisterial district, in one table, the tracts of land, and in a separate table the town lots, arranged in the alphabetical order of the names of their owners;" and section 94 of the same chapter provides for the correction of entries in the land or personal property books of the county, by applying for such relief to the County Court; thus clearly showing that the whole matter is within the control and supervision of the County Court, and making it eminently proper that the County Court should be the relator in a proceeding by way of *mandamus* to compel the commissioner to proceed as required by law in assessing the real estate of his county.

In the case of *Heffner* v. *Com.*, 28 Pa. St. 108, the court held that, "when public rights are to be subserved, public

officers must apply for the writ." As to the degree of interest requisite to entitle a party to be a relator in a proceeding by way of *mandamus*, we find in the fourteenth volume of the American and English Encyclopedia of Law, under the head of "Mandamus," p. 218, it is said that "when the remedy is resorted to for the purpose of enforcing a private right the person interested in having the right enforced must be the relator. The relator is considered the real party, and his right to the relief must clearly appear; but, where the object is the enforcement of a public right, the people are regarded as the real party, and the relator need not show that he has any legal interest in the result. It is enough that he is interested as a citizen in having the laws executed, and the duty in question enforced." Citing *State* v. *Madison Co.*, 92 Ind. 133, and numerous other cases.

So, also, in the case of *People* v. *Halsey*, 37 N. Y. 334, the court held that "the rule that the relator in a writ of *mandamus* must show an individual right to the thing asked does not apply to cases where the interest is common to the whole community."

Counsel for defendant in error cite High on Extraordinary Remedies, § 431, in support of their position that there is no right of action in the County Court of Wayne county, which reads as follows:

"As regards the degree of interest on the part of the relator requisite to make him a proper party on whose information the proceedings may be instituted, a distinction is taken between cases where the extraordinary aid of a *mandamus* is invoked, merely for the purpose of enforcing or protecting a private right, unconnected with the public interest, and those cases where the purpose of the application is the enforcement of a purely public right, where the people at large are the real party in interest. And while the authorities are somewhat conflicting, yet the decided weight of authority supports the proposition that, where the relief is sought merely for the protection of private rights, the relator must show some personal or special interest in the subject-matter, since he is regarded as the real party in interest, and his rights must clearly appear.

On the other hand, where the question is one of public right, and the object of the *mandamus* is to procure the enforcement of a public duty, the people are regarded as the real party, and the relator at whose instigation the proceedings are instituted need not show that he has any legal or special interest in the result, it being sufficient to show that he is a citizen, and, as such, interested in the execution of the laws."

This section draws a clear and well-defined distinction between a party who is seeking to enforce a private right and one who is seeking to enforce a public right.

In this instance, a public right is sought to be enforced. The County Court of Wayne county is a corporation, under section 1 of chapter 39 of the Code, and, as such, may sue and be sued. The interest it is seeking to enforce is a public interest, and one, as we have seen, which is placed by statute within the supervision and control of the County Court. Our conclusion, therefore, is that the said County Court was properly made the relator in this proceeding, and that the demurrer was not well taken upon that point.

It is also contended by counsel for the defendant in error that the action sought to be required of said commissioner was judicial in character, and not ministerial, and therefore *mandamus* does not lie. In determining this question it is only necessary to look to the petition, and ascertain from its prayer what action on the part of the defendant in error is sought to be enforced; and we find that the court is not asked to compel him to exercise any discretion, but, on the contrary, to perform a plain duty, prescribed by statute, to wit, to place lands which have been laid off into town-lots, streets, and alleys on the land-books as town-lots, and to value the same by the lot, and not by the acre or tract.

Now, where lands have been laid off into town-lots, and the plat of the same is accessible to the commissioners, as it was in this case, it is a mere ministerial duty that he is required to perform in placing them on the books as town-lots. When he comes to assess their ˮvalue, it is another and different matter. In doing that he would be required to exercise discretion. But the petition for ʾ this writ does not seek to control his discretion; the prayer of the peti-

tion being that he be required "to place said town-lots upon the said assessment books for the said first assessment district of Wayne county at such value as, in his opinion, should be placed upon the several and respective lots," leaving him free to exercise his discretion as to the valuation to be placed upon the same.

In the case of *State* v. *Buchanan,* 24 W. Va. 363, point 10 of syllabus, it was held by this Court that *mandamus* is the proper remedy to compel an assessor to assess property which is liable to taxation. While the exercise of judicial discretion will not be controlled by *mandamus,* yet *mandamus* is proper to compel the assessor to exercise his discretion." In my view of the facts presented by the petition, this was all that was sought to be done in the case under consideration; and although, in the case of *State* v. *Buchanan, supra,* the assessment of personal property was sought to be enforced, the principle is the same, and the right to proceed in such a case by *mandamus* is no longer an open question in this State. The general rule is clearly set forth in 2 Dill. Mun. Corp. p. 1014, § 832 :

"If the inferior tribunal, corporation, or public agent or officer has a discretion, and acts and exercises it, his discretion can not be controlled by *mandamus.* But if this inferior tribunal, body, officer, or agent refuses to act in cases where the law requires him to act, and the party has no other legal remedy, and when in justice there ought to be one, a *mandamus* will lie to set them in motion to compel action ; and in proper cases the court will settle the legal principles which should govern, but without controlling the discretion of the subordinate jurisdiction body or officer."

In view of these authorities, under the facts and circumstances presented in this case, I am of opinion that the court below committed an error in sustaining the demurrer interposed by the defendant, and in dismissing the relator's writ and petition, and the judgment complained of must be reversed, and the cause remanded, with costs to the plaintiff in error.

REVERSED.    REMANDED.