# Special Term in October, 1896.

## CHARLESTON.

### MARCUM *v.* BALLOT COM'RS OF LINCOLN, LOGAN, MINGO, AND WAYNE COUNTIES.

Submitted October 26, 1896—Decided October 27, 1896.

1. BALLOT COMMISSIONERS—*Mandamus.*

     A writ of *mandamus* does not lie to control or reverse the action of a court, board, or other inferior tribunal, or of an officer, where such action is one of discretion, judicial or *quasi* judicial; but it does lie where such action is merely ministerial.

2. BALLOT COMMISSIONERS—MINISTERIAL ACTS.

     A ministerial act or duty is one which is to be performed under a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to or exercise of the judgment of the one doing it upon the propriety of of the act's being done.

3. BALLOT COMMISSIONERS—PRELIMINARY QUESTIONS—*Mandamus.*

     The fact that the decision of a merely "preliminary question" may be of judicial nature will not forbid the use of *mandamus.*

4. BALLOT COMMISSIONERS—*Mandamus.*

     Section 89, chapter 3, of the Code, as re-enacted in chapter 25, Acts 1893, in cases involving duties of ballot commissioners under said chapter, gives the writ of *mandamus* more scope than at

common-law, rendering it a process to control them as to all actions ministerial or judicial.

5. BALLOT COMMISSIONERS—POLITICAL CONVENTIONS—NOMINEES FOR PUBLIC OFFICE.

In passing on the right of nominees for public office to appear on election ballots, this Court recognizes the right of the convention making them to judge of the election, qualification, and returns of its own members, and will not go back of its action to inquire as to the right or title of delegates admitted by it as members.

J. H. FERGUSON, BROWN, JACKSON & KNIGHT, J. W. ST. CLAIR and MARCUM & MARCUM for petitioner.

COUCH, FLOURNOY & PRICE for respondents.

BRANNON, JUDGE:

A question presents itself which, I confess, has greatly perplexed me, requiring close thought and nice discrimination for its solution. Does *mandamus* lie in this case? Until our present election law, called the "Australian Ballot," courts did not know political parties as such. They had no status as such in legal contests except in congress and other political bodies, but under the new election law they have distinctive legal existence whenever questions arising under it come before the courts.

Two certificates of nomination for judge of the eighth circuit, emanating from two conventions, each claiming to be the true democratic nominating convention, were presented to the ballot commissioners of Wayne county, each asking a place on the official ballots, in exclusion of the other. The commissioners were bound to decide which should go on the ballots as the representative nominee of that party. They determined in favor of one. The plaintiff seeks to have this Court compel the ballot commissioners to place him on the ballots, thus reversing the action of the ballot commissioners. It is said this can not be done by *mandamus*, because the decision by the board of ballot commissioners between the competing nominations involved discretion—involved a decision of facts, a *quasi* judicial function; and that *mandamus* does not lie; and that recourse must be had to a writ to review this action—appellate process; and that this writ is *certiorari*.

I admit the doctrine laid down in *State* v. *County Court*, 33 W. Va. 589 (11 S. E. 72) that *mandamus* will not lie to control the exercise of the discretion of any court, board, or officer when the act complained of is either judicial or *quasi* judicial in its nature; that the inferior tribunal may be compelled to act in such case if it unreasonably neglects or refuses to do so, but, if it does act the propriety of its action, however erroneous, can not be questioned or controlled by *mandamus*—followed in *Miller* v. *County Court*, 34 W. Va. 285 (12 S. E. 702) and *State* v. *Herrald*, 36 W. Va. 721 (15 S. E. 974). But it is equally well settled that if the act to be performed is not one of legal discretion—that is judicial in nature—but is merely ministerial, *mandamus* will lie. *Board* v. *Minturn*, 4 W. Va. 300; *Doolittle* v. *County Court*, 28 W. Va. 158 full note; *Dane* v. *Derby*, 89 Am. Dec. 732. It turns, then, on the character of the act. The board of ballot commissioners is not a court, but a merely ministerial body. But is its function of admitting the names of nominees to a place on the official election ballots in nature one of discretion, judicial in nature, or merely ministerial?

A ministerial act is one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment upon the propriety of the act being done. Merrill, Mand. § 30; *Flournoy* v. *City*, 79 Am. Dec. 468, and note; *Security Co.* v. *Fyler* (Conn.) 22 Atl. 494. Chapter 3, Code 1891, provides how nominations for public office shall be made and certified to be put on the ballots, and in section 33, says that it shall be the duty of the ballot commissioners to provide ballots for every election, "and cause to be printed on the appropriate ballot the name of every candidate whose name has been certified to or filed with the clerk of the circuit court in the manner provided for in this chapter." Now, I confidently assert that, when a name of a candidate for office so certified comes before this board, it is its bounden duty to put it on the ballot, and that this duty is ministerial, because the board has no discretion as to putting it on. Ministerial is the nature of the duty of the board when but one certificate of nomination is before

it. But when a second certificate of nomination is before the board, does it at once change the nature of the duty from what it was before, simply ministerial, into one of judicial nature? Here the question is close and difficult. Notice that the above definition of a ministerial act says it is ministerial when the officer or tribunal has no discretion as to the propriety or impropriety of doing the act, ·but must do it; that is, when he has no power to say whether he will or will not do the act, it is ministerial; but when he has power or discretion to do or not to do the act, as his judgment on the facts directs him, the act is judicial in nature, not ministerial. Merrill, Mand. §§ 30, 33. Clearly, this board had no discretion to say it would put no name on the ballot, and therefore the general nature of its function was ministerial. But this does not dispose of our trouble, for, though the general nature of making up election ballots by these commissioners be ministerial, yet it does not follow that *mandamus* inevitably lies; for, "it is not the office of the writ to control discretion even in the act of performing ministerial duties," says Spell. Mand. § 1395. If, to discharge the ministerial duty, it becomes necessary for the tribunal to decide on law and facts between contesting claims or rights, it becomes judicial in nature. When the two contestant nominees were both before the board, the matter became a *lis*, a controversy between two parties upon their respective rights, which called on the board to investigate facts, and upon them say which, in the eye of this election law, was entitled to the Democratic place on the ballot. This was then a judicial question, called *quasi* judicial when the matter is before an officer or a tribunal, not a court; and such a question can not be made the basis of a *mandamus* at common-law.

As seen above, the definition of a ministerial act says it is one that must be done, without any right on the part of the officer or tribunal called upon to perform it to say whether it ought or ought not to be done. Then what act is that in this case? To solve this case we must know what act it is on the part of the board about which it must have no discretion to do or not to do it, which will justify *mandamus*. Is it the act of the board in putting some name for

judge on the Democratic ticket? or is it the act of saying which is the true Democratic nominee between Marcum and Harvey—in other words the act of putting or not putting Marcum's name on it, that being the particular act sought to be enforced by the *mandamus?* If it were the former, *mandamus* would lie, because the general nature of the duty of putting nominees on a ticket is ministerial; but obviously the particular thing which the *mandamus* seeks to have done is the insertion of Marcum's name on the ticket, and as the board exercised discretion as to that because called upon to decide which of the two nominations was the true one entitled to a place on the ticket, that act is *quasi* judicial, and *mandamus* could not enforce it under the common law of *mandamus.* I can see that it may be said that the act of deciding between the two nominations is only what is known in the law of *mandamus* as a "preliminary question", and that though the decision of such a "preliminary question," involve matters judicial in character, that does not exclude the use of this writ, because its decision is a mere incident, leading up to the main function or act, that of making out the ballots, as it must put some name on, and, to do so, must inevitably decide which of these two names it will recognize; and it is the main or ultimate act—the putting a name on—which gives cast to the act.

It is true that, in law, the character of a purely "preliminary question," though it be judicial, does not test the right to use the writ of *mandamus.* Merrill, Mand. § 44, says: "It often happens that a ministerial duty exists which may be enforced by *mandamus* provided certain facts exist. It becomes important to decide whether the determination as to the existence of these facts is a judicial or ministerial act. Hardly a case can be imagined when a public officer or tribunal is required to take action upon the happening of an event or the existence of a certain condition of things wherein there is not some discretion to be exercised as to whether the event has happened, or the condition of things has occurred. * * * Any board or tribunal must determine whether the proper parties are before it, and whether the facts calling for its action exist. If such de-

termination is judicial, and is adverse to taking any action, such officer or board can not be called on to do an act which it is his duty to do only in case the facts are different from such conclusion, because no judicial determination can be reviewed or overthrown in *mandamus* proceedings. If it should be held that in all cases the determination of such preliminary questions calls for the exercise of judicial discretion, the writ of *mandamus*, as has been often said, might as well be expunged from the remedial code. If such determination is not an exercise of judicial discretion, then the courts can review such determination, and finding the facts to justify the demand, can order the performance of the ministerial act, which is a duty under these circumstances." Just here I note that this doctrine as to the decision on a "preliminary question," not rendering an act in nature ministerial, judicial, is asserted by Judge White in *Com.* v. *Justices of Fairfax County Ct.* 2 Va. Cas. 9.

Now, apply this law touching a "preliminary question" in this case. What is that preliminary question in this case to which that law applies? It was whether there was before the ballot commissioners a certificate of nomination in the form and with the signatures required by law; for if there was, the event had occurred, or the condition of things existed, giving them jurisdiction to act. The decision of whether it was in proper form, and signed by the proper parties, was the "preliminary question," just as the question whether a deed presented for record is properly authenticated is a preliminary question to be decided by the clerk, or whether a surveyor's report of land sold for taxes is in proper shape, as shown in the cases of *Dawson* v. *Thruston*, 2 Hen. & M. 132, and *Manns* v. *Givens*, 7 Leigh, 689, and *Delaney* v. *Goddin*, 12 Gratt. 266. In deciding on the certificate, questions of law, in greater or less degree, will have to be decided; but they are only on a preliminary question. But, having decided this preliminary question as to one certificate, the board finds a second proper on its face. What then? Another question springs up: Which is the one entitled to appear on the Democratic ticket? and it is one which must be decided on facts outside the certificates. The question addressed to the board was:

Shall Marcum's name go on the ticket, or Harvey's? In the decision of this question the board had right of judgment, because it must put one name on, not both, and that judgment was the result of fact and law. Marcum's *mandamus*, seeks to place his name on the ticket, and that is just the act about doing or not doing which the board necessarily had discretion to exercise, and it is judicial in character, and *mandamus* does not lie, unless the new statute gives it.

I call attention to the fact, as stated by Judge Green in *Doolittle* v. *County Court*, 28 W. Va. 158, that the old Virginia cases are not so rigid against *mandamus* in the application of the rule that it lies only in matters ministerial, as most other states, as is seen from the cases he cites. And I call attention to the case of *Dew* v. *Judges of Sweet Springs Dist. Ct.* 3 Hen. & M. 1, holding *mandamus* to be a proper remedy to compel a court of record to reverse its action in appointing a clerk in room of another, and restoring that other to his office, which would seem to be a judicial act. Also, *Lewis* v. *Whittle*, 77 Va. 415. Judge Green said in the *Doolittle Case*, that, in deciding on the question whether a duty is ministerial, our courts should be governed largely by the spirit pervading the decisions of Virginia. Judge Green also said it seemed to him that it was the general nature of the main act to be performed being ministerial that tests whether the suit lies, under the Virginia cases, and the act of putting a name on the ballot being ministerial, we might, under the Virginia cases, with force hold that without the aid of a statute, it lies in this case; but as Judge Green said in the *Doolittle Case*, the Virginia rule needed modification, and as the principle is almost universal elsewhere, forbidding *mandamus* except in purely ministerial matters, and as this Court has often said that such is the true rule, I come to the conclusion that without statute aid, *mandamus* does not lie in this case. *Board* v. *Minturn*, 4 W. Va. 300; *State* v. *County Court*, 33 Id. 589 (11 S. E. 72); *State* v. *Herrald*, 36 W. Va. 721 (15 S. E. 974); *Miller* v. *County Court*, 34 W. Va. 285 (12 S. E. 702).

I now turn to another feature in the case, arising under statute. Section 89, chapter 3, Code 1891, provides that any

officer resting under any duty under that chapter might be compelled to perform it by *mandamus* from the circuit court, and to promote early decision, dispensed with the usual preliminary rule, and commanded a speedy hearing. That was not, in the opinion of the legislature, sufficiently adequate in its remedial provisions, for in 1893 (Acts 1893, chapter 25) it greatly enlarged that section, by providing, not only that officers under it should be compelled to perform their duties by *mandamus* from the circuit court, but gave a writ from the Supreme Court "to compel any officer to do and perform legally any duty herein required of him." It requires the supreme court to convene not later than ten days from the date of the writ to hear it, giving it precedence over other business, and requiring it to be determined within five days. Was it intended to give *mandamus* only as limited by the common-law before this statute—that is, where the action was ministerial only? If so, why the need of this provision when the common-law already gave it that scope? Was not something more designed? Did not the legislature reflect that speedy decision was essential in these matters? The statute shows this in the features above spoken of. May it not be plausibly said that it intended to enlarge the efficacy of the writ of *mandamus* by adding it to *certiorari* as a cumulative remedy, because more speedy? In the emergencies arising in election matters, as for instance, in this very matter of making up the ballots, it would not do to wait upon a slow *certiorari* in the circuit court, and then a writ of error in this Court. The day of election would be past before judgment final. Application to the Court of Appeals by *certiorari* could not be given, because this Court has no original jurisdiction in *certiorari* as it has in *mandamus;* and hence recourse was given to *mandamus,* for the purpose of trying all questions and matters, if in nature reviewable, pertinent to the subject, treating all duties of officers under this act as ministerial for this purpose, giving the writ of *mandamus* in such instances as cases *sui generis.* And note that section 89 declares generally that "any officer or person upon whom any duty is devolved by this chapter may be compelled to perform the same by writ of *mandamus,*" not using the ad-

verb "legally"; but in giving the writ from the Supreme Court, it grants it to compel any officer herein to do and perform legally any duty herein required of him. Why use the word "legally"? The power to compel performance is given in general words in the opening of the section, but later in the section it grows more specific, by using the word "legally," thus using it sedately. We must give every word a meaning, especially as the lawmaker grew more precise or emphatic by that word. It is an implication quite strong in connection with other features that the officer should be compelled to perform all duties, of every cast, ministerial or judicial, according to law. It seems to me the legislature intended to use, for the sake of speedy final determination in the court of last resort, the only writ available under the circumstances—*mandamus* as a writ of review to operate as a writ of *certiorari;* taking cognizance of all questions arising in the case, if the matter be one in nature at all reviewable on *certiorari.* The legislature was afraid to risk *certiorari* in such cases of emergency. If we give the statute any other construction, it would leave parties in many cases in grave matters without relief.

I must be frank to say that in this hastily prepared opinion I have not made a case entirely free from all doubt in my own mind, but it seems better to me than would be a contrary conclusion. And there is this further reflection to give better satisfaction than would a contrary conclusion, and that is that, if Marcum has any right that has been denied, we ought not throw his cause out of court merely because of mischoice of remedy, unless such mischoice be clear. It is always a hard case to deny relief merely because of mischoice of remedy, when the party would have been entertained had he chosen another form of remedy. Here a dismissal of the writ would be a denial of all relief to which he may be entitled by reason of the nearness of the time when ballots must be printed and the election held.

Question has been raised whether the action of ballot commissioners is reviewable at all in any mode. If not then the most flagrant innocent mistakes and wrongs of in-

tent by an inferior tribunal, hurtful not merely to citizens' rights as candidates, but to the public, and defeating the will of political parties, might exist, and there would be no redress. This Court has held supervisors and county courts acting as canvassers in election matters, in several cases, as subject to review; and why should not the action of ballot commissioners be also? Suppose there were no review, then in Cabell county one candidate would be a party's candidate for judge or congress or senate, in Wayne another, in Logan another. But, under the construction of the statute above given, the legislature has made their action the subject of review.

Another question is presented important to decide. There were certain irregularities in the magisterial convention sending delegates to the county convention of Cabell county, and certain irregularities in the county convention which sent two competing sets of delegates to the circuit convention. We are asked to look back as far as, not only the county convention, but the magisterial district convention, and say which set of delegates was the proper delegation representing the democracy of Cabell county. But we can not do so—can not go behind the circuit convention. That convention, like the two branches of the state legislature and congress, like all deliberative bodies having power to organize, is the judge of the election, qualification, and returns of its own members. If we go back of the circuit convention, how far shall we go? What shall limit our inquiry? Must we overlook every convention or primary election to say whether its members were old enough or of the politics to entitle them to participate? There must be a limit of reason to our powers. That is the convention whose nominations are in question before us. To hold otherwise would be for this Court to assume power to supervise and review the organization of political conventions—practically to organize them.

Coming later to a decision of the case on its facts, without detailing them, we find that a Democratic nominating convention for said circuit assembled, but, owing to controversy, dissension, and disturbance, split into two sections which organized into two separate bodies each claiming to

be, the true convention. Without elaborating this branch of the case, it is enough to say that the refusal of the ballot commissioners to put a candidate's name on the ballot is to be taken as right until shown to be erroneous. To warrant in reversing their action, we must see that the convention making the nomination is the convention properly authorized to speak the will of the party it represents, and the case must be made clear enough to say that a given one is that convention. Two clashing conventions may be so circumstanced as to warrant the conclusion that neither is authorized to speak for the party. We hold that neither of these conventions was so authorized. The law is that the writ of *mandamus* "will not lie unless the relator shows a clear legal right to have the thing done, which he asks for. If the right be doubtful, the writ will be refused." Merrill, Mand. § 55. The plaintiff has not shown such clear right, and we therefore refuse the peremptory *mandamus*.

ENGLISH, JUDGE (*dissenting*) :

I can not concur in the opinion expressed by Judge BRANNON in the foregoing opinion, for the following reasons: As I understand the law, the writ of *mandamus* does not lie to control the discretion of an inferior tribunal or officer, it will compel such tribunal or officer to act, but never determines how the act shall be done if such inferior officer or tribunal has any discretion, and the act to be performed is merely ministerial. In the case under consideration the board of ballot commissioners have acted, and have placed T. H. Harvey on the ballot, thus discriminating between his claim to be so placed and the claim of W. W. Marcum, in doing this said board of ballot commissioners have necessarily exercised their discretion, and determined the question between the two candidates. Now, if this Court, by the writ of *mandamus*, steps in, and hears the testimony and examines the certificates that were before the ballot commissioners, and reviews their action, and determines who shall be placed on the ticket to be voted for, it takes from the ballot commissioners the powers which the law confers upon them, and allows this Court

to use the writ of *mandamus* as an appellate proceeding to revise and correct the action of the ballot commissioners, which, as I conceive, is beyond the limit of the powers to be exercised by the writ of *mandamus*. This question has been determined in such emphatic terms again and again by this Court, that I thought it was at rest. In the case of *Board* v. *Minturn*, 4 W. Va. 300, the Court thus states the law: "The writ of *mandamus* is a proper remedy to compel all inferior tribunals to perform the duties required of them by law; and when there is left to the inferior tribunal no discretion but to perform the duty in a particular way, by doing a certain specified act, then the inferior tribunal acts ministerially, and may be compelled by *mandamus*, not only to perform its duties, but to perform them by doing a certain specific act. When there is left to the inferior tribunal any discretion to perform its duty in any other way than by doing a certain specific act, then such inferior tribunal can be compelled by *mandamus* to act and perform the duties required of it by law, but can not be directed what decision shall be made. In such case the court has no jurisdiction by *mandamus*, and the decision of the inferior tribunal can not be reviewed by *mandamus*. If any errors have been committed, the proper mode of review is by *certiorari*." If it was otherwise this Court need not compel the board of ballot commissioners to act, but would act for them, and there would be nothing left for them to do. In this instance W. W. Marcum and T. H. Harvey have each presented to the board of ballot commissioners certificates of their respective nominations by the same party on the same day, to the same office, and the board of ballot commissioners, after investigation and hearing the testimony adduced by each party, have acted, and placed Thomas H. Harvey upon the ticket to be voted for; and, in doing so, they exercised discretion, and did not perform a mere ministerial act. They might have performed the act in a different way, to wit: by placing the name of W. W. Marcum on the ticket to be voted for, which as we have seen, this Court has laid down as the distinction between a ministerial act and a judicial act. This question was again passed upon, in plain, positive and unmistakable terms, in the case

of *State* v. *County Court*, 33 W. Va. 589 (11 S. E. 72) a case in which the opinion was written by Judge Snyder, in which it was held (second point of syllabus) that "*mandamus* will not lie to control the exercise of the discretion of any court, board, or officer when the act complained of is either judicial or *quasi* judicial in its nature. (3) The inferior tribunal may be compelled to act in such case if it unreasonably neglects or refuses to do so; but, if it does act; the propriety of its action, however erroneous and improper, can not be questioned or controlled by *mandamus*. (4) *mandamus* can not be permitted to usurp the place of a writ of error or appeal; nor will it lie when there is any other adequate and complete legal remedy." To the same effect is the holding of this Court in the case of *Miller* v. *County Court*, 34 W. Va. 285 (12 S. E. 702) where it is held: (1) "Where an inferior tribunal is authorized to use its discretion, it can not be controlled by *mandamus* in judicially determining questions properly presented for its consideration, and within its jurisdiction. (2) If any such inferior tribunal refuse to exercise its discretion and render its judgment, it may be compelled to act by *mandamus*, but the manner of its action or result of its decision can not be thus controlled. (3) When such inferior tribunal has acted and rendered its decision and judgment, the writ of *mandamus* will not be allowed to usurp the province of an appeal or writ of error or *certiorari*, and its action can not thereby be reviewed or reversed." Other decisions might be cited to the same effect, but these are deemed sufficient, as I think, to show what has heretofore been regarded as the province and true scope of the writ of *mandamus* in this state. Does section 89 of chapter 25 of the Acts of 1893 enlarge the scope of the writ, or in any manner extend the limits of its jurisdictional power beyond those prescribed by the common-law? I think not. When we turn to the statute, it merely provides that "a *mandamus* shall lie from the Supreme Court of Appeals, or any one of the judges thereof in vacation, returnable before said Court, to compel any officer herein to do and perform legally any duty herein required of him." This clause is found in a section of the election law, and, as I understand, only au-

thorizes a *mandamus* if an officer therein named refuses to do and perform legally—that is, as required by law—any duty therein required of him. Here this board of ballot commissioners had not refused; it had acted, and, in doing so, had, in its discretion, placed Thomas H. Harvey on the ticket to be voted for; and, having exercised its discretion in so doing, this Court can not by the writ of *mandamus*, control or set aside its action; and, in my opinion, a peremptory writ of *mandamus* should be refused.