STATE OF MINNESOTA *ex rel.* John Thompson *vs.* COMMON COUNCIL OF THE CITY OF ST. PAUL.

June 24, 1878.

The canvass of votes cast for a school inspector, at an election in the city of St. Paul, is properly made by the common council.

*Certiorari* to review the action of the common council of the city of St. Paul in canvassing the votes for school inspectors of that city.

*H. J. Horn* and *J. J. Egan,* for relator.

*Geo. L. & Chas. E. Otis,* for respondents.

BERRY, J.   Chapter 87, Sp. Laws 1876, enacts that at each annual election in the city of St. Paul, one school inspector shall be elected in each "aldermanic" district, and that the inspectors thus elected shall together constitute the board of education.   To this board the entire control and management of the public schools of the city is committed.   The main question in this case is, by whom are the votes cast for the inspectors to be canvassed?   There is no provision of statute expressly providing for any canvass of the votes cast for a school inspector, or of the votes cast for any city officer. There is, of course, then, no provision of statute expressly prescribing how or by whom a canvass shall be made.   The whole subject of canvass is left to implication.   That it could have been the design of the legislature to authorize elections of officers as important as these, to whom the care of the public schools is committed, without intending that there should be some way in which the result of the elections could be authoritatively ascertained and declared, is simply inconceivable.   Nothing short of absolute logical necessity would warrant the conclusion that any such farce as such an election would be, could have been contemplated by the legislature.   To prevent the purpose of the law from being utterly defeated, it therefore becomes the duty of the court diligently to inquire whether some implication cannot be drawn from the statute which will meet the necessities of the case.

In prosecuting this inquiry, it is at the outset observable that by subchapter 2 of the city charter, (Sp. Laws 1874, c. 1,) a general control of the machinery of city elections is committed to the common council.   For instance, the council is authorized to establish and alter election districts; to designate the places where elections shall be held; to give notice of the times and places of holding elections, and of the officers to be elected; to appoint the judges of election; to fill vacancies in the places of such judges; and to order new elections

to be held in case the people fail to elect on the day designated by law. Section 5, of subchapter 2, provides that "when two or more persons shall receive an equal number of votes for the same office, the election shall be determined by the casting of lots in the presence of the common council, at such time and in such manner as they shall direct." This provision implies that it shall in some way be ascertained that two or more persons have received an equal number of votes for the same office, and that this fact shall in some way be brought to the knowledge of the common council. Now, as no person, nor any other body, is authorized to make a canvass, the council cannot ascertain that any two or more persons have received the equal number of votes spoken of, unless it makes a canvass itself, or one is made under its direction; and, therefore, without such canvass, the council cannot perform the duty, imposed upon it by law, of superintending and directing the casting of lots. It seems to us that section 5 is clearly framed upon the basis that the canvassing of votes cast at elections is to be done by, or under the direction of, the common council. Indeed, the implication that it is to be so done, is well-nigh irresistible. It is so entirely consistent and in keeping with the provisions before cited, committing the general control of the machinery of elections to the common council, as to appear to form an appropriate and necessary part of a general scheme. It is also in harmony with other provisions of the charter relating to elections. For instance, section 6, of subchapter 2, requires the returns for all city elections to be made to the city clerk. By section 4, subchapter 3, the city clerk, who is elected by the council, is required to keep all papers and records of the city, and to attend the meetings of the common council and keep a record of its proceedings. With reference to the analogies of our general statutory law respecting the canvassing of votes cast at elections, the word "returns" is entitled to be taken as meaning an official statement of votes cast at an election, transmitted to some authorized custodian, for the

purpose of being canvassed by some proper authority. The city clerk has no semblance of authority to canvass. His duties are largely those of a clerk of the common council, whose business it is to attend their meetings, for the purpose, not of proceeding himself, but of recording their proceedings. It may, therefore, fairly be presumed that the returns are required to be sent to him as clerk of the common council, in order that they may be within the reach of that body, and that it may take such action upon them as is necessary, and as the law permits.

Irrespective of these particular provisions of statute, we think that the following general considerations go to show the reasonableness of the position that the council possess authority to make the canvass, or to direct it to be made. Here is a duty necessary to be performed by somebody. It is a duty which can be performed by the common council as appropriately as by any other department of the city government, or any other tribunal. As it is a duty not specifically assigned to anybody, it is part of a general residuum of power. In the case of a city government, any unassigned residuum of power falls naturally and reasonably to the common council as representing, more than any other branch, the municipality. This is upon a principle analogous to that upon which, under our system of government, as well as that of England, the residuum of power rests with the legislature as the representative of the people or nation.

Upon the whole, then, our conclusion is, that the canvass of votes cast at the city elections for school inspectors, as well as the canvass of votes cast for other city officers, is properly made by the common council. It is proper to add, that this conclusion is in accordance with long-standing usage, as counsel inform us it has been the unvarying practice of the common council to canvass the votes cast at city elections for many years, and probably ever since the organization of the city; and accordingly, among the rules of its own proceedings adopted by the council, is one which has

been in force ever since 1869, (if not ever since 1863,) and which, among other things, provides that the following shall be the sixth order of business, viz., "New business, embracing resolutions, and other matters offered for the consideration of the council: *provided*, that the canvassing of the returns of the municipal elections, the election and appointment of officers, and the appointment of standing committees, shall supersede all other business."

We are further of opinion that the duties of the council in making such canvass are purely ministerial. In the absence of some statutory provision to the contrary, it is to be assumed that the analogies of our statute law in reference to similar canvasses are, in this respect, followed and preserved in reference to this canvass. Indeed, it may be doubted whether any other than a ministerial canvass would not (without express statutory authority) be held bad, for its inconsistency with the general spirit and policy of our statute law relating to the canvassing of votes cast at an election. That the canvassing of votes cast at general elections in this state is a purely ministerial duty, was determined in *O'Ferrall* v. *Colby*, 2 Minn. 148 (180.) It follows that the writ of *certiorari* allowed in this case must be quashed, since writs of that character do not lie to review ministerial acts or proceedings. *Sinclair* v. *Com'rs of Winona County*, 23 Minn. 404.

We might, perhaps, have disposed of this case, in a very brief opinion, proceeding upon the basis that if the common council had no authority whatever in the matter of canvas - ing the votes, their acts in so doing would be, upon their face, such utter nullities as to afford no ground for applying to this court for relief. And if this were not so, we might have determined the case, upon the short ground that, admitting the authority of the common council to canvass, their proceedings, in so doing, were purely ministerial, and, therefore, not reviewable upon a writ of *certiorari*. But, upon the whole, we have thought it best for all concerned, and for the public interest,

to inquire into and squarely determine the authority of the council in matters of this kind, and to decide the case upon the basis of such determination.

Writ quashed.