# CHARLESTON

RADER *et al* v. BOARD OF EDUCATION, &c.

Submitted February 7, 1905.    Decided February 21, 1905.

1. ELECTION PRECINCT—*Establishment of—Statute Construed.*

Section 6 of chapter 3 of the Code, relating to the change, division or consolidation of election precincts, provides that no change, division or consolidation shall be made by the county court within ninety days preceding an election, and that no such change, divis-

ion or consolidation shall be valid without giving due notice at least one month before any election by publication, &c., held, that the word "election," as used in said provisions of the statute, means an election held under general law and not an election held under a special act of the legislature, establishing an independent school district, upon the question of consenting to the creation of such school district. (p. 224.)

2.  INDEPENDENT SCHOOL DISTRICT—*Election—Canvassing Board.*

Under the act of the legislature, (chapter 73, Acts 1903,) the Board of Education of Beaver District therein mentioned is the proper board to canvass the returns, and ascertain the result, of the election held under said act, upon the question of consenting to the creation of the independent school district therein mentioned. (p. 223.)

3.  ELECTION—*Appointment of Election Commissioners.*

If the tribunal required by law to appoint election commissioners fails to appoint such commissioners to conduct an election at a legally constituted voting place, the qualified voters present on election day (not less than ten in number) may elect such commissioners in the manner prescribed by section 7 of chapter 3 of the Code. (p. 226.)

Appeal from Circuit Court, Nicholas County.

Action by J. E. Rader and others against the Board of Education of Beaver District. From an order awarding a peremtory writ of *mandamus*, the Board of Election appeals.

*Affirmed.*

MORTON & WYSONG and T. B. HORAN, for plaintiffs in error.

W. G. BENNETT, MORRISON, CORLEY & CRAIG, and KING & EDDY, for defendants in error.

COX, JUDGE:

On the 21st of February, 1903, the Legislature passed an act, (chapter 73, Acts 1903), establishing the Independent School District of Richwood, in Nicholas county. By section 26 it is provided that section 1 of the act shall not apply to the territory therein named until the people of Beaver District, by a majority of the votes cast at an election, to be held within sixty days after the act takes effect, or at any subsequent election, at the usual voting places of said district, shall declare in favor thereof.

By section 27 of the act it is provided that the election

mentioned in the previous section shall be superintended, conducted, and the result thereof ascertained and declared, by officers appointed for that purpose by the board of education at the time ordered by the board, and that notice shall be published once a week for two successive weeks, next prior to the time of holding said election, &c., and that the provisions of the election law of this State, so far as applicable, shall be in force and govern such election, unless otherwise provided.

On the 11th day of April, 1903, the board of education gave notice of an election under said act to be held on the 22nd day of April, at the regular voting places in Beaver District.

At the date of the passage of the act Beaver District was composed of two election precincts, numbered one and two.

Prior to the order for said election, the county court of Nicholas county, in session on the 17th of March, 1903, made an order reciting that, at the previous election, more than two hundred and fifty votes were cast at each of the precincts, numbers one and two in Beaver District, and ordering that precinct number two be divided into two voting precincts, designated as numbers three and four, and fixing the boundaries of each and establishing a voting place in each, which, for number four, was Mayor's office, in the town hall in the town of Richwood.

The board of education appointed election commissioners for the voting places as they existed before precinct number two was divided. The election under said special act was held at the voting places of the precincts as they existed before the division, and also at the voting place of the new precinct number four.

On the 23rd of April, the board of education met to canvass the returns of the election, held under the act on the 22nd day of April, at which meeting, Kessler, one of the commissioners conducting the election at the voting place in the new precinct number four, appeared before the board and offered to deliver to it the returns, poll books and ballots of that precinct. The board refused to receive them or canvass the returns from that precinct, but canvassed the returns of election from the voting places of the old precincts, as they existed before precinct number two was divided, and ascer-

tained the result to be, for independent district one vote, against independent district three hundred and seventeen votes. It is alleged, and we believe admitted by the agreed statement of facts in this case, that the total vote cast, at the voting place in the new precinct number four, was four hundred and thirty-one, all of which were cast for the independent district except fifteen, which were cast against it. If the vote of this precinct had been counted, it would have changed the result of the election.

After the refusal of the board to receive and canvass the returns of the election from the new precinct number four, Rader and others, citizens and taxpayers of Beaver District, residing in Richwood, applied by petition to the circuit court of Nicholas county for a *mandamus* to compel the board of education to receive the ballots and poll books from the election held in said precinct number four, and to count the same and declare the result of the election from the returns, including precinct number four; upon which the alternative writ of *mandamus* was awarded. On the 6th of April, 1904, the case was heard by the circuit court upon motion to quash the alternative writ of *mandamus*, and upon the answer and return thereto, and the subsequent pleadings thereon and the agreed statement of facts in writing, all matters of law and fact being submitted to the court for consideration. The court awarded the peremptory writ, and, from that order, the board of education was granted a writ of error and *supersedeas* by a judge of this Court.

The sole question in this case is, should the board of education of Beaver District have received and canvassed the returns of the election from the voting place in the new precinct number four? The board of education says not, because, under the law, it is not the canvassing board for that election. This position is not well taken. The board was, by the act, invested with the power of fixing the time and giving the notice of election. The election was required to be superintended, conducted, and the result thereof ascertained and declared, by the officers appointed for that purpose by the board. The board was expressly required to do everything necessary in order to hold the election. The act, by necessary implication, although not in express words, made the board of education the canvassing board of that election. This is true,

notwithstanding section 27 of the act declares that the provisions of the election law in this State, so far as applicable, shall be in force and govern such election, unless otherwise provided. It is not to be supposed that the legislature thereby intended that the county court which, under this act, was required to perform no duty in relation to the election previous to it, was, after the election, to be the canvassing board of the returns. In the case of *Thompson* v. *Common Council of City of St. Paul*, 25 Minn. 106, it was held that the Common Council of St. Paul, being invested with power to give notice of the time and places of holding elections, of the officers to be elected, to appoint judges of elections, to fill vacancies in the places of such judges and to order new elections to be held in case the people failed to elect on the day designated by law, was the proper tribunal to canvass the returns of elections for city purposes, although the statute did not, in express terms, give such authority. Paine on Elections, section 602, announces the same doctrine.

Another objection, made to the election held in the new precinct number four, is, that the two new precincts, created out of the old precinct number two, were of no effect as to this election, and that the new voting places established therein were not usual voting places within the meaning of the act; because the division of the old precinct was made within ninety days preceding this election, and because the notice by publication and posting was not given preceding this election as required by section 6 of chapter 3 of the Code.

Section 6 of chapter 3 of the Code provides, among other things, that the county court of any county, may change the boundaries of any precinct within such county, or divide any precinct into two or more precincts, or consolidate two or more precincts into one, or change any place of holding elections whenever public convenience or public good may require it. * * * * That no change, division or consolidation shall be made by the county court within ninety days next preceding an election. * * * * That no such change, division or consolidation shall be valid without giving due notice at least one month before any election by publication in two newspapers published in said county, &c. * * * * Said court shall, within ten days from the date of such order, cause to be published, &c. We take

it from these provisions that the giving of the notice provided for is a matter subsequent to the order of the court changing, consolidating or dividing precincts. In the case at bar, the order of the county court, dividing precinct number two, was made on the 17th of March, and, on the 11th. day of April, following, the board of education ordered this election under the special act. Was the order of the county court valid as to this special election, and was the voting place, established in the new precinct number four, one of the usual voting places within the meaning of the act? The answer to this question depends upon the true construction of the word "election," as used in the provisions of section 6 of chapter 3 above quoted. Did the legislature intend that the county court could not make any change, division or consolidation of precincts within ninety days, and without giving the notice required before any special election which might be authorized by, or called under, a special act, creating an independent school district, or municipality, comprising only a small part of the voting population within the county? If such be the intent, a sufficient number of such special elections, author ized by special acts of the legislature and properly distributed, might prevent any change, division or consolidation of election precincts between regular biennial elections held in the State, notwithstanding the votes of a precinct exceed the statutory limit and the reason for the change or division may be imperative. On the other hand, if the word "election," as used in the provisions of the statute quoted, refers and applies to an election held under general law, the county court may divide, change or consolidate election precincts without reference to these special elections, under special statutes or ordinances. If the word "election," as used, means an election under general law, then the order of the county court, dividing precinct number two in Beaver District, was valid, there being no claim that it was made within ninety days of an election under general law, and there being sufficient time before such election for the giving of the notice required, and it not appearing that such notice was not so given. It only appears that such notice was not given prior to this special election. The giving of the notice being a matter subsequent to the order after being given, the division, change or consolidation operates from the date of the

order, and we must presume, in the absence of anything being shown to the contrary, that the order of the county court became effective. The word "election," as used in the provisions of the statute above quoted, means an election under general law, and not a special election held pursuant to a special act, such as the one in question. It necessarily follows that the voting place established for the new precinct number four was one of the usual voting places within the meaning of the special act.

Another objection, made to the election in this precinct number four, is, that no commissioners were appointed by the board of education to hold the election at the voting place therein. Section 7 of chapter 3 of the Code provides that, if none of the commissioners of election shall appear at the hour appointed for opening the polls, the qualified voters present, being at least ten in number, shall elect three commissioners of election to act in their stead, &c. This provision of the statute is an enabling provision, made for the purpose of permitting a vote to be had at an election of the people. It is the intention that the will of the people shall be expressed, notwithstanding there may be no commissioners present to conduct the election. The case at bar comes within that provision, at least by implication. To hold otherwise, would be to say that the legislature intended that the tribunal whose duty it was to appoint election commissioners might prevent an election and thwart the will of the people by simply neglecting or refusing to appoint commissioners of election. Such construction should not be given the statute unless it be plainly correct. It is contended that any voter might have proceeded by *mandamus* to compel the board to appoint commissioners to hold the election at the voting place in precinct number four. That may be true, but that question is not involved. The question is, after the election has taken place, shall the vote of the precinct be rejected, because the board failed to perform the duty of appointing election commissioners for that voting place? Under the circumstances presented in this record, the vote of that precinct should not have been rejected because the board failed to appoint commissioners to hold the election at the voting place. The voters had the right to elect commissioners in accordance with the statute to conduct the election at that place.

The other errors assigned are insufficient to reverse the judgment of the lower court. A proceeding in *mandamus* is a civil proceeding which may be in the name of the state at the relation of an individual, or simply in the name of an individual as plaintiff. *Matheny* v. *County Court*, 47 W. Va. 672.

The question, as to whether or not the board should have canvassed the returns of the votes cast at the voting place of the old precinct number two, is not involved here, as no order was made in relation to it by the lower court.

In this case we have not deemed it necessary to pass upon the question as to whether or not the action of the county court, in establishing, dividing, changing or consolidating election precincts may be attacked collaterally in a *mandamus* proceeding.

The special election in this case was held and conducted, as far as we can see, without any fraud on the part of the county court, or on the part of the board of education, or on the part of the election officers, or in the conduct of the election in any way. This is not a contest for office. No private interest is involved. The interest of the public alone is in question. In such a case, it was the duty of the board of education, and is the duty of the courts as well, to uphold, and not to overthrow, an election of the people held pursuant to an act of the legislature and under color of authority, unless it substantially violates some rule of law governing such election. The only intimation of illegality as to the vote of the new precinct number four is that there were illegal votes cast there. So far as the record is concerned, there is no evidence that illegal votes were so cast; but, if illegal votes were cast at that voting place, it would constitute no reason for rejecting the whole precinct by the canvassing board and for refusing to receive and canvass the returns thereof. *Brazie* v. *Commissioners*, 25 W. Va. 213; *Brown* v. *Commissioners*, 45 W. Va. 828.

For the reasons stated, the judgment of the circuit court of Nicholas county, awarding the peremptory writ of *mandamus*, is affirmed.

*Affirmed.*